# In the

# United States Court of Appeals

## For the Seventh Circuit

———————

No. 03-1377

JEFFREY L. JENS,

*Plaintiff-Appellant,*

v.

JO ANNE B. BARNHART, COMMISSIONER
OF SOCIAL SECURITY,

*Defendant-Appellee.*

———————

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 02-C-400-S—**John C. Shabaz**, *Judge.*

———————

ARGUED SEPTEMBER 11, 2003—DECIDED OCTOBER 10, 2003

———————

Before FLAUM, *Chief Judge*, and POSNER and
EASTERBROOK, *Circuit Judges.*

FLAUM, *Chief Judge.* Jeffrey Jens applied for Social Se-
curity benefits, alleging disability due to psoriasis, psoriatic
arthritis, and fibromyalgia. The Social Security Administra-
tion denied his application initially and upon reconsider-
ation. The Administrative Law Judge ("ALJ") concluded
that Jens was not disabled, and the Appeals Council denied
Jens's petition for review. The district court upheld the de-
nial of benefits, and also denied Jens's request for a remand
pursuant to the sixth sentence of 42 U.S.C. § 405(g). Jens

now appeals to this court, arguing that the ALJ's decision to deny benefits was not supported by substantial evidence, and further that the additional evidence submitted to the district court merits a remand. We affirm.

## I. Background

### A. Jens's Impairments

At the time of the ALJ's decision, Jens was forty-six years old. After Jens was diagnosed with psoriasis in January 1997, Dr. Richard Leer, his primary physician, referred him to the Mayo Clinic for further evaluation. At the Mayo Clinic, psoriatic arthritis in Jens's right foot was confirmed by X-ray. Jens was offered a right shoe insert, injection therapy of both knees, and inpatient ultraviolet-B therapy. In September 1997 Jens was admitted to the Mayo Clinic for tar and ultraviolet-B therapy. At that time, Dr. Toshihiko Maruta concluded that Jens had developed an affective disturbance due to his physical impairments. Dr. Alan Duncan opined that Jens "carries the clinical diagnosis of psoriatic arthritis, causing significant knee discomfort and intermittently preventing him from working."

In April 1998 Dr. Leer found Jens's psoriasis "under fair control," and noted that Jens suffered from insomnia. Jens's rheumatologist, Dr. Howard Swanson, concluded in July 1998 that Jens's psoriasis "looks much better than last year." He further observed that Jens's "pain is still out of proportion to the exam lab or x-ray findings."

In August 1998 agency psychologist Dr. Joseph Roe performed a consultative psychological examination of Jens. Dr. Roe concluded that Jens had an adjustment disorder and noted that "pain appears to interfere with [Jens's] ability to concentrate and think clearly." In addition, agency physician Dr. Michael Haase examined Jens and observed

that he suffered from psoriatic arthritis and depression, but that his psoriasis was not severe.

Over the next two years, Jens continued to see Drs. Leer and Swanson. In January 1999 Dr. Leer remarked that Jens was "somewhat depressed," and that Jens had "significant psoriasis of the scalp and scattered areas of the trunk." In February 1999 Dr. Swanson noted that the psoriasis was "moderate, but better than in the past." Jens returned to the Mayo Clinic in November 1999 where Dr. Duncan concluded that Jens suffered from possible psoriatic arthritis and myofascial pain syndrome.

Dr. Joseph Holt performed a consultative examination at the request of the state agency in February 2000. Dr. Holt noted that Jens's medical problems included psoriasis, insomnia, lower extremity pain, and symptoms consistent with mild depression. In his recommendations, Dr. Holt opined that Jens's "chronic pain appears to significantly impact his abilities to physically interact on a daily basis," but that Jens is "able to sit quietly and do activities with his upper extremities apparently with no difficulty."

Jens returned to Dr. Leer in May 2000 for a periodic health assessment. Dr. Leer noted that Jens had widespread psoriatic lesions, but also that his sleep pattern was "good" and his mental status was "entirely normal." Dr. Leer completed a functional capacity evaluation of Jens, recommending that Jens is capable of performing sedentary work for eight hours a day, forty hours a week.

B. *Administrative Proceedings*

Jens testified on his own behalf before the ALJ. According to his testimony, Jens manages the psoriasis by using multiple tars and creams to keep his body moisturized, in addition to using a "UVB home light" daily and soaking in oil for one hour every three days. Although the psoriatic

plaques had once covered ninety percent of his body, only ten percent of Jens's body was affected at the time of the hearing. Jens's psoriatic arthritis "comes and goes," requiring him to take painkillers when necessary. The fibromyalgia flares up "once or twice a week," requiring him to take a stronger painkiller and "pretty much just stay[] in a chair or bed." His hands "cramp up" often.

Regarding his daily activities, Jens testified that he watches television or reads for six hours a day; he drives, although not "very far;" he walks two or three hundred feet at a time, with the benefit of a cane; he makes sandwiches; he occasionally washes the dishes. Lastly, Jens testified that he missed "probably two or three days a month" of work due to his condition. Jens believes that these absences led to the termination of his employment.

At the hearing, Dr. Andrew Steiner testified as a medical expert. Dr. Steiner stated that the medical evidence demonstrated treatment for joint pain, possibly related to psoriatic arthritis; joint tenderness and aches possibly related to myofascial pain syndrome and/or fibromyalgia; psoriasis; and insomnia. Dr. Steiner stated that Jens's physicians had diagnosed Jens with mild depression and an adjustment disorder. In addition, Dr. Steiner opined that Jens's impairments, considered alone or in combination, did not meet or equal a listing in the Social Security Administration's medical listing of impairments.

The ALJ called vocational expert ("VE") Joseph Thomas to testify. The VE testified that he had reviewed Jens's file, and that Jens's past relevant work was as a buyer planner and a production scheduler. He classified both positions as "sedentary, [and] semiskilled." The ALJ asked the VE to consider a hypothetical claimant of Jens's age, education and work experience, suffering from joint pain related to psoriatic arthritis or fibromyalgia, psoriasis on the scalp and elbows, insomnia, some depression, an adjustment dis-

order, and reduced concentration. The VE testified that such a hypothetical individual could perform light, semi-skilled work, including both of Jens's past positions. The ALJ then modified the hypothetical claimant to account for a "further restriction of concentration or focus." In regards to the modification, the VE testified that the hypothetical claimant would be unable to perform Jens's former positions. The VE further testified that an excess of one day per month of sick leave might preclude such an individual from maintaining his employment.

In a July 2000 decision, the ALJ followed the five-step sequential analysis set forth in 20 C.F.R. § 404.1520 for the consideration of applications for Disability Insurance Benefits. At step one, the ALJ found that Jens had not engaged in substantial gainful activity since May 9, 1998, the date that he alleged he became unable to work. Although the ALJ found in step two that Jens "has the severe physical impairments of psoriasis, psoriatic arthritis, myofascial pain, high blood pressure, and a chronic pain disorder," he found in step three that these impairments failed to meet or equal the requirements of any listed impairment. The ALJ also considered that Jens's physicians had diagnosed mild depression and an adjustment disorder, and noted that Jens "often experiences deficiencies of concentration, persistence or pace . . . [but] the claimant never experiences episodes of deterioration . . . in work-like settings." Thus, the ALJ concluded that Jens's mental impairments failed to meet or equal the requirements of any listed impairment. The ALJ assessed Jens's residual functional capacity ("RFC"), and found that the restrictions recommended by Dr. Leer permitted basic work activity. The ALJ found that Jens's testimony and written statements were "not entirely credible." Finally, the ALJ concluded at step four that Jens's RFC did not preclude him from performing his past relevant work as a buyer planner and production scheduler. Thus, the ALJ did not need to reach step five, and he concluded that Jens was not disabled.

## II. Discussion

The issue before this court is whether the ALJ's findings were supported by substantial evidence, not whether Mr. Jens is disabled. *See Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995). "Evidence is 'substantial' if it is sufficient for a reasonable person to accept as adequate to support the decision." *Johansen v. Barnhart*, 314 F.3d 283, 287 (7th. Cir. 2002) (quoting *Sims v. Barnhart*, 309 F.3d 424, 428 (7th Cir. 2002)). "To determine if substantial evidence exists, the court reviews the record as a whole but is not allowed to substitute its judgment for the ALJ's 'by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility.'" *Cannon v. Apfel*, 213 F.3d 970, 974 (7th Cir. 2000) (quoting *Williams v. Apfel*, 179 F.3d 1066, 1071-72 (7th Cir. 1999)). Rather, if the findings of the Commissioner of Social Security are supported by substantial evidence, they are conclusive. *Perkins v. Chater*, 107 F.3d 1296 (7th Cir. 1997).

On appeal, Jens first challenges the ALJ's conclusion that Jens retains the RFC to perform his past relevant work, alleging that his mental impairments preclude him from doing so. In support of his argument, Jens claims that Dr. Roe's characterization of Jens's concentration as "somewhat poor" should have led the ALJ to find Jens incapable of semiskilled work. Further, Jens argues that the ALJ wrongly disregarded the VE's conclusion that a hypothetical claimant would be unable to perform Jens's past relevant work if that claimant was suffering from concentration difficulties beyond those described in Dr. Leer's functional capacity evaluation of Jens.

Despite these assertions, we find the ALJ's conclusion that Jens remains capable of performing his past relevant work supported by substantial evidence. The record reveals that Jens did not complain of concentration problems to his treating physician. Jens testified that he reads books and

watches television for six hours a day. In his written application for disability insurance, he characterized his social functioning as "ok." Notably, the VE opined that a claimant could perform Jens's past relevant work, even if he struggled with the mental impairments described in Dr. Leer's functional capacity of Jens: an adjustment disorder, depression, and pain disorder. The ALJ acknowledged that "the claimant often experiences deficiencies of concentration, persistence, or pace." Even so, the ALJ concluded that these deficiencies did not render Jens incapable of semiskilled work. The record as a whole supports the ALJ's conclusion that Jens has the RFC to perform his past relevant work.

Next, Jens challenges the ALJ's decision to the extent that it relies on the VE's categorization of Jens's past relevant work as sedentary. The VE testified that Jens's past relevant positions of buyer planner and production scheduler required sedentary and semiskilled functioning. Jens argues that the buyer planner position actually requires light exertion, and was therefore erroneously described as sedentary. In support of this argument, he cites the *Dictionary of Occupational Titles* ("DOT"), United States Department of Labor, (4th ed. 1991) which classifies the position of "purchasing agent" as requiring light exertion. However, the ALJ was permitted to rely on the VE's opinion, even if the VE contradicted the DOT. *Powers v. Apfel*, 207 F.3d 421, 436 (7th Cir. 2000). And in this case, Jens's actual responsibility as a buyer planner conformed to the VE's testimony. Jens reported that his work required him to stand for one hour; walk for one hour; sit for six hours; and lift less than one pound. These requirements qualify as "sedentary work," rather than "light work," in the agency's regulations. *See* 20 C.F.R. § 404.1567(a). Thus, as the VE's testimony reflected the nature of Jens's work as it was actually performed by him, the ALJ's reliance on the VE's testimony was proper.

Jens further argues that the ALJ failed to adequately question the VE regarding the impact of Jens's absenteeism on his RFC. As this court has noted, the ALJ must question the vocational expert regarding every impairment set forth in the claimant's record to the extent that the impairment is supported by the medical evidence. *Herron v. Shalala*, 39 F.3d 329, 333 (7th Cir. 1994). Jens's claim of continuing absenteeism was not an impairment supported by the medical evidence. Dr. Leer, Jens's physician, opined that Jens's impairments would not preclude him from working a forty hour week. In fact, no doctor commented that Jens's impairments currently prohibit him from attending work on a regular basis, notwithstanding Jens's history of inpatient treatment at the onset of the psoriasis.

Next, Jens challenges the ALJ's determination that Jens's testimony and written statements were "not entirely credible." According to Jens, this determination is flawed because the ALJ did not specify which statements were incredible, nor did he provide an evidentiary basis for the credibility finding. Pointing out these omissions, however, does not demonstrate that the ALJ's credibility finding is not supported by substantial evidence. As this court has previously stated, "because hearing officers are in the best position to see and hear the witnesses and assess their forthrightness, we afford their credibility determinations special deference. We will reverse an ALJ's credibility determination only if the claimant can show it was patently wrong." *Powers*, 207 F.3d at 435 (internal quotations and citations omitted). In this case, the record provides adequate support for the ALJ's credibility finding. Dr. Swanson reported that Jens's pain was out of proportion to his laboratory findings; Jens did not complain to his physicians of an inability to concentrate; Jens testified that he was able to watch television and read for six hours a day; Jens's treating physician concluded that he was capable of working forty hours a week. In sum, Jens has not demonstrated that the ALJ's credibility finding is patently wrong.

Finally, Jens argues that the district court should have granted his request for a remand pursuant to 42 U.S.C. § 405(g) for the consideration of a report by VE Richard Willette. The report lists the tasks and skills required of production clerks. It does not contain any specific information about Jens or his personal capacity to accomplish the tasks listed.

To merit a remand pursuant to the sixth sentence of 42 U.S.C. § 405(g), a claimant must show that "there is new evidence which is material and that there is good cause for failure to incorporate such evidence into the record in a prior proceeding." Evidence is "material" if there is a "reasonable probability that the Commissioner would have reached a different conclusion had the evidence been considered." *Perkins*, 107 F.3d 1296 (internal quotations omitted.) It is highly unlikely that the ALJ or the Commissioner would have reached a different conclusion had they had the benefit of Mr. Willette's report. The report merely details the responsibilities of most buyer planners, whereas the ALJ had already considered Mr. Jens's testimony regarding his actual responsibilities as a buyer planner. Further, the report is not new for purposes of § 405(g) review. " 'New' evidence is evidence 'not in existence or available to the claimant at the time of the administrative proceeding.' " *Sample v. Shalala*, 999 F.2d 1138, 1144 (7th Cir. 1993) (quoting *Sullivan v. Finkelstein*, 496 U.S. 617, 626 (1990)). Although the report had not yet been written at the time of the ALJ's decision, the information summarized in the report had long been in existence. The report does not provide a new perspective on the information that was available to Jens before his hearing before the ALJ, and thus does not meet the newness requirement of § 405(g). The district court correctly denied Jens's request for a sentence six remand.

### III.  Conclusion

The ALJ's decision is supported by substantial evidence. Jens has not met his burden for a sentence six remand under 42 U.S.C. § 405(g). Accordingly, the judgment of the district court upholding the denial of benefits is AFFIRMED.

A true Copy:

      Teste:

                   _____

                  *Clerk of the United States Court of*
                     *Appeals for the Seventh Circuit*