**Richard BARTHELEMY,**
**Plaintiff–Appellant,**

v.

**Jo Anne B. BARNHART,**
**Defendant–Appellee.**

No. 03–2884.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 28, 2004.

Decided Aug. 19, 2004.

Peter C. Drummond, Litchfield, IL, for Plaintiff–Appellant.

Malinda Hamann, Social Security Administration, Office of the General Counsel, Chicago, IL, for Defendant–Appellee.

Before MANION, DIANE P. WOOD, and EVANS, Circuit Judges.

## ORDER

Richard Barthelemy suffers from obesity, hypertension, and sleep apnea. He applied for disability insurance benefits in September 1998 based on high blood pressure and leg pain. The district court affirmed the Commissioner's final decision denying Barthelemy disability benefits, and he appeals. Barthelemy argues that the ALJ's decision is not supported by substantial evidence and that the ALJ's handling of the proceedings was biased. We affirm.

Barthelemy, who has consistently weighed around 300 pounds, has a long history of obesity and high blood pressure. He has been diagnosed with severe hypertension and has followed a regimen of medication designed to stabilize his blood pressure. Since 1997, he has been treated by Dorothea DiCiro, a nurse practitioner, for his hypertension and other general concerns. Barthelemy has also seen numerous doctors and specialists concerning his hypertension, sleep apnea, and depression.

Barthelemy's hypertension caused him to stop working in April 1998. From that time through July 2001, Barthelemy's doctors disagreed on whether his blood pressure was under control. On six occasions, Barthelemy's diastolic blood pressure was measured above 100; at that level, says his treating physician Dr. Suresh, Barthelemy "experiences diaphoresis or sweating, headaches, blurred vision, and near fainting symptoms."

During this time, Barthelemy also visited Dr. Matick, a neurologist, who conducted a sleep study to test him for sleep apnea. The study incorporated the use of a continued positive airway pressure (CPAP) device. After the study concluded, Dr. Matick recommended that Barthelemy continue to use the CPAP device. On a follow-up visit, Dr. Matick noted that Bar-

thelemy was sleeping approximately eight hours a night and "usually wakes up feeling well" when he uses the CPAP device.

At the first hearing, the ALJ granted Barthelemy's request to have a psychological evaluation performed by a clinical psychologist. Dr. Stevens performed the psychological evaluation and diagnosed Barthelemy with an Adjustment Disorder, including depression, anxiety, and physical complaints. But after performing a re-evaluation several months later, Dr. Stevens concluded that Barthelemy could perform all work-related activities.

As additional support for Barthelemy's claim of disability, Dr. Suresh, one of Barthelemy's treating physicians in the clinic where DiCiro practices, wrote a letter to the ALJ stating that Barthelemy had suffered from hypertension since 1990, that his elevated blood pressure was stress-related, and that working elevated his blood pressure to levels that caused dizziness, sweating, headaches, and near-fainting symptoms. Noting that any blood pressure reading above 120/80 is abnormal, Dr. Suresh concluded his letter by stating, "At this time [his] blood pressure, if he is under no stress, remains in the 150/90 range however if he is under any type of stress his blood pressure becomes extremely elevated and the possibility of a stroke is most likely."

Barthelemy filed for disability benefits in September 1998, alleging an onset date of April 1998. The Social Security Administration denied both Barthelemy's initial claim and his request for reconsideration. The ALJ also denied Barthelemy's claim, but the ALJ's decision was vacated and remanded by the appeals council because the record did not contain medical evidence of Barthelemy's mental functioning. The ALJ was instructed to obtain additional evidence about Barthelemy's depression

and mental impairment "including the effect of stress on the claimant's blood pressure and other symptoms and their effect on his ability to work."

After conducting two additional hearings, the ALJ again denied Barthelemy's claim. The ALJ applied the five-step analysis, *see* 20 C.F.R. § 404.1520, and found that Barthelemy had not engaged in any substantial gainful activity since his alleged onset of disability; that he suffered from the "severe" impairments of hypertension, obesity, leg pain, sleep apnea, and depression; that he did not suffer from impairments which met or equaled the level of severity of a listed impairment; that he could not perform his past relevant medium work; that he had a high school education, skilled work experience, and transferable skills; and that he could perform light work. The ALJ then applied the applicable vocational guidelines ("the grid") and found that Barthelemy, even once he reached 50 years of age (qualifying as "approaching advanced age"), was not disabled. See 20 C.F.R. Part 404, Subpt. P, App. 2 §§ 202.15, 202.22 (2002). The appeals council subsequently denied review, rendering the ALJ's order the Commissioner's final decision for purposes of judicial review. Barthelemy filed this action challenging the denial of his benefits in the district court. The district court affirmed the Commissioner's decision that Barthelemy was not disabled.

At this stage, we examine whether the ALJ's findings were supported by substantial evidence, not whether Barthelemy is disabled. See *Jens v. Barnhart,* 347 F.3d 209, 212 (7th Cir.2003). "Evidence is 'substantial' if it is sufficient for a reasonable person to accept as adequate to support the decision." *Johansen v. Barnhart,* 314 F.3d 283, 287 (7th Cir.2002) (quoting *Sims v. Barnhart,* 309 F.3d 424, 428 (7th Cir. 2002)). When reviewing the record, this court does not substitute its judgment for the ALJ's "by reconsidering facts, reweighing the evidence, resolving conflicts in evidence, or deciding questions of credibility." *Williams v. Apfel,* 179 F.3d 1066, 1071–72 (7th Cir.1999). Rather, if the Commissioner's findings are supported by substantial evidence, they are conclusive. *Jens,* 347 F.3d at 212.

*Barthelemy's Hypertension*

■ On appeal, Barthelemy first argues that the ALJ misstated the record when he concluded that Barthelemy's diastolic pressure only twice exceeded 100 during the relevant periods. Barthelemy asserts that his diastolic blood pressure actually met or exceeded 100 on 32 occasions between 1996 and 2001. Most of those 32 readings, however, preceded April 1998, his asserted onset date. For the relevant period between April 1998 and July 2001, Barthelemy's diastolic blood pressure in fact met or exceeded 100 on 6 occasions.

Although the ALJ did underestimate the number of times that Barthelemy's diastolic pressure spiked, the difference between two and six episodes is not so great as to require us to conclude that the ALJ erred; the record as a whole supports the ALJ's conclusion that Barthelemy's diastolic pressure reached the 100 mark only infrequently, and so substantial evidence does support the ALJ's decision. See *Jens,* 347 F.3d at 212.

*Barthelemy's treating physician*

In a related argument, Barthelenly asserts that the ALJ's misstatement of the diastolic pressure readings tainted his decision to not give the opinion of Barthelemy's treating physician controlling weight. Barthelemy's treating physician Dr. Suresh stated that Barthelemy's hypertension rendered him disabled. Barthelemy asserts that the ALJ relied on the same erroneous finding that his blood pressure had exceeded 100 on only two occasions as

a reason for discounting Dr. Suresh's opinion, and thus that the treatment of Dr. Suresh's opinion was not supported by substantial evidence.

An ALJ may discount a treating physician's medical opinion if it is inconsistent with other evidence in the record, but he must adequately articulate his reasons for doing so. *Clifford v. Apfel,* 227 F.3d 863, 870 (7th Cir.2000); see 20 C.F.R. § 404.1527(d)(2). While "internal inconsistencies may provide good cause to deny controlling weight to a treating physician's opinion," *Clifford,* 227 F.3d at 871, a treating physician's opinion regarding the nature and severity of the condition is entitled to controlling weight if supported by the medical evidence and consistent with substantial evidence in the record, *Gudgel v. Barnhart,* 345 F.3d 467, 470 (7th Cir. 2003); see 20 C.F.R. § 404.1527(d)(2).

■ Although Barthelemy argues that Dr. Suresh's opinion is entitled to controlling weight because he is the treating physician, the Commissioner correctly noted during oral argument that there is nothing in the record documenting that Dr. Suresh ever treated Barthelemy. Although Dr. Suresh was a physician at the clinic where DiCiro practiced, it is unclear whether Dr. Suresh ever acted as Barthelemy's treating physician. Furthermore, we have concluded that the ALJ's miscalculation of Barthelemy's blood pressure was not a material error. Therefore, we cannot conclude that the ALJ erred by deciding not to give Dr. Suresh's opinion controlling weight. See *Williams,* 179 F.3d at 1071–72 (stating that we will not substitute our own judgment for that of the ALJ).

*Stress*

■ Barthelemy further argues that in deciding that Barthelemy could perform light work, the ALJ failed to consider that work-related stress caused his blood pressure to increase. But this is not an accurate description of the ALJ's decision. The ALJ did consider how work-related stress affected Barthelemy's blood pressure by finding that Barthelemy could not perform his past relevant medium work. Nevertheless, based on the testimonies of different doctors, the ALJ concluded that Barthelemy could still perform light work. Therefore, substantial evidence in the record supports the ALJ's finding that Barthelemy could perform light work. See *Jens,* 347 F.3d at 212.

*Obesity*

■ Barthelemy next asserts without authority that "because of the date of onset alleged, the ALJ was obligated to evaluate [his] claim of obesity under the old 10.10 regulation of obesity, 20 C.F.R. Pt. 404, Subpt. P, App. 1, 10.10, Repealed." Under the former regulations, according to Barthelemy, his weight automatically qualifies him as disabled. In 1999, however, the Commissioner deleted the obesity listing, Listing 9.09, from the list of qualifying impairments, see 20 C.F.R. Pt. 404, Subpt. P, App. 1, and replaced it with more restrictive requirements governing claims of disabling obesity, see *Revised Medical Criteria for Determination of Disability, Endocrine System and Related Criteria,* 64 Fed.Reg. 46122, 46123 (Aug. 24, 1999); *Ingram v. Barnhart,* 303 F.3d 890, 893 (8th Cir.2002). The new regulations apply retroactively to all disability claims filed before the effective date, including those awaiting initial determination or pending judicial appeal. See 65 Fed.Reg. 31039, 31042 (May 15, 2000). Because Barthelemy's case was awaiting initial determination at that time, the new regulation applies here. *Id.* Moreover, even under the old listing Barthelemy's obesity was not severe enough to constitute an impairment. See 20 C.F.R. Pt. 404, Subpt. P,

App. 1, § 9.09 (1999) (requiring a 71–inch tall male to weigh 328 pounds).

*Bias*

■ Barthelemy next presents a general argument that the ALJ was generally biased against him "because his prior decision denying the claim of disability had been reversed." Barthelemy asserts that the ALJ violated his right to due process when he questioned the medical expert, Dr. Crawford, in an intimidating manner, informing her that he had already determined Barthelemy to be "not disabled" under the Federal Regulations and that Barthelemy "retained the residual functional capacity to perform a full range of light work activity."

The right to a trial by an impartial decisionmaker is a basic requirement of due process, *In re Murchison*, 349 U.S. 133, 136, 75 S.Ct. 623, 99 L.Ed. 942 (1955), and the decisionmaker must also avoid even the appearance of bias, see *Commonwealth Coatings Corp. v. Cont'l Cas. Co.*, 393 U.S. 145, 149–50, 89 S.Ct. 337, 21 L.Ed.2d 301 (1968). Although an adjudicator is presumed to be unbiased, see *Schweiker v. McClure*, 456 U.S. 188, 195, 102 S.Ct. 1665, 72 L.Ed.2d 1 (1982), this presumption can be rebutted by showing that the ALJ "displayed deep-seated and unequivocal antagonism that would render fair judgment impossible." Compare *Liteky v. United States*, 510 U.S. 540, 556, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994) (judicial disqualification). Rulings alone are almost never sufficient evidence of bias. *Id.* at 555, 114 S.Ct. 1147; see *Marozsan v. United States*, 90 F.3d 1284, 1290 (7th Cir.1996). Instead, evidence is required that the decisionmaker "had it 'in' for the party for reasons unrelated to the officer's view of the law, erroneous as that

view might be." *McLaughlin v. Union Oil Co.*, 869 F.2d 1039, 1047 (7th Cir.1989).

Barthelemy has not pointed to specific conduct by the ALJ that reflects a "deep-seated and unequivocal antagonism that would render fair judgment impossible." *Liteky*, 510 U.S. at 556, 114 S.Ct. 1147. He identifies only a number of comments by the ALJ to Dr. Crawford, a testifying witness, that he believes reflect judicial bias, but these comments to Dr. Crawford are directed toward clarifying and summarizing the proceedings up to that point. More than that, the ALJ asked Barthelemy at the hearing whether he had adequately summarized the case for Dr. Crawford, and Barthelemy stated, "Yes, a fair rendition of what previously took place." Barthelemy fails to point to any compelling evidence that the ALJ "had it in" for him. See *McLaughlin*, 869 F.2d at 1047.

To the extent that Barthelemy charges that the ALJ denied him due process by not allowing him to cross-examine Dr. Crawford, by cutting off her testimony and by "unconscionably badgering" her, Barthelemy fails to develop any cognizable argument with citations to the record or relevant case law. See Fed. R.App. Proc. 28(a)(9).

In summary, we conclude that the ALJ's decision was supported by substantial evidence and that Barthelemy has not demonstrated any other reason to overturn it. For these reasons, we AFFIRM the judgment of the district court.