UNPUBLISHED ORDER
Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois  60604**

Argued March 1, 2005
Decided April 27, 2005

**Before**

Hon. MICHAEL S. KANNE, *Circuit Judge*

Hon. TERENCE T. EVANS, *Circuit Judge*

Hon. ANN CLAIRE WILLIAMS, *Circuit Judge*

No. 04-2853

| | |
|---|---|
| RENEE A. WILSON,<br>　　　　　*Plaintiff-Appellant,*<br><br>　　　v.<br><br>JO ANNE BARNHART,<br>　　　　　*Defendant-Appellee.* | Appeal from the United States District Court for the Western District of Wisconsin<br><br>No. 04 C 74<br><br>John C. Shabaz,<br>*Judge.* |

**O R D E R**

Renee Wilson appeals a district court's judgment affirming the denial of her request for Disability Insurance Benefits arising out of her severe back condition. Because the ALJ's decision is based on substantial evidence, we affirm.

Wilson has spinal scoliosis and degenerative joint disease, and, in 1982, she had Harrington rods (a system of hooks and rods designed to treat the scoliosis) inserted into her spine.  In August 1996, Wilson sustained a back injury while working on an assembly line.

In January 1997 Wilson saw Dr. Marc Durette to evaluate a potential disability claim.  During that visit, Wilson informed Dr. Durette that she had experienced gradually worsening pain in her lumbar region, numbness in her legs, and chronic neck and shoulder pain over the past few years.  As a result, she had difficulty bending or lifting heavy objects, and felt pain with repetitive sitting and standing. Wilson took Advil to relieve her pain, and Dr. Durette provided her with

prescription pain medication.

In May Wilson again saw Dr. Durette.  She continued to take Advil for pain, because the prescription pain medicine Dr. Durette offered did not help.  Dr. Durette noted that Wilson could walk normally, and despite pain and restrictions in her range of motion, he made "no acute findings."  Shortly after the visit, Wilson applied for disability benefits.

In June a state agency physician concluded that Wilson could occasionally lift 20 pounds, frequently lift 10 pounds, stand and or walk for a total of six hours, and sit for a total of six hours in a normal eight-hour workday.  The physician noted no other limitations.

Dr. Durette saw Wilson for a third time in August.  At that time, Wilson stated that she still experienced lower back and neck pain, could stand or sit for only a short period of time, and spent most of her day in a supine position.  She also told Dr. Durette that she had recently attempted to do part-time, light work, but felt increasing pain.  Dr. Durette noted that her symptoms "remained essentially unchanged" since May and reported his assessment on a physical capacity evaluation form.  On that form, Dr. Durette concluded that Wilson could: sit for 15-20 minutes at a time, stand or walk for one hour at a time, and do each of those activities for a total of two hours each day; occasionally lift and carry up to 10 pounds and frequently lift and carry up to 5 pounds; occasionally squat, climb, or reach, but could not bend or crawl; and had mild driving restrictions.

A state agency physician opined that Dr. Durette's conclusion was based not on his own objective findings, but rather on Wilson's statements regarding her failed attempt at light work.  In a residual functional capacities form, that physician found that Wilson could occasionally lift and carry up to 10 pounds and frequently lift and carry less than 10 pounds; stand or walk for a total of at least two hours a day and sit for about six hours in an eight-hour workday.  The physician concluded that Wilson could do sedentary work.

In November 1997 Dr. Durette saw Wilson again and noted that she complained of worsening pain and walked with a stiff gait.  Although Wilson took approximately 12 Advil a day, she felt only minimal relief, and the pain kept her in bed most of the day.

In late December 1997 Wilson visited a chiropractor and reported during follow-up visits that her condition was improving, and that her need for Advil had lessened.  However, in February 1998 Wilson returned to Dr. Durette and reported a "significant flare-up" of back pain.

On May 8, 1998, Dr. Durette examined Wilson again, noting that she continued

to experience pain, but her condition remained "essentially unchanged" since her February visit.  Dr. Durette also completed a functional capacities evaluation, concluding that Wilson could stand and or walk for one hour at a time for a total of eight hours in an eight-hour workday (though she needed frequent changes of position); sit for four hours (again with possibility of changing positions); could lift and carry up to 10 pounds; only occasionally work above shoulder level, bend, twist, turn, climb, push or pull; and that Wilson should never squat or crawl.

On May 20, without explanation, Dr. Durette filed a "corrected" assessment report that was significantly more restrictive than the May 8 report.  Although the May 8 report concluded that Wilson could sit for four hours and stand or walk for a total of eight hours during an eight-hour workday, the May 20 report limited Wilson to a total of only two hours of sitting and two hours standing or walking in an eight-hour workday and imposed additional restrictions on bending, twisting, or turning.

During Wilson's 1998 hearing, the ALJ disregarded Dr. Durette's May 20 "corrected" assessment report because it was inconsistent with the doctor's reports from August 1997 and May 8, 1998.   Relying on the two earlier reports, the ALJ concluded that Wilson could work a six-hour workday and thus was not disabled.

On appeal, the Appeals Council vacated and remanded the decision because the ALJ failed to adequately address or resolve the inconsistent medical reports from Dr. Durette.  A few weeks after the Appeals Council decision, in February 2001, Wilson sought twice weekly treatment from a chiropractor, and later that month sought medical treatment at a local clinic after she slipped and hurt herself.

In November 2001, a different ALJ held a second hearing for Wilson.  At that hearing, Wilson testified that since 1998 her ability to perform everyday tasks had decreased and she could no longer perform light housework, simple cleaning, or make beds, and that her pain had become much worse.  But because Wilson had no health insurance, she could not afford to seek on-going health care in 1999 and 2000 and had to rely on over-the-counter medicines to treat her pain.

At that same hearing, a vocational expert ("VE") testified that no past relevant work existed for a person with Wilson's limitations—sitting or standing for up to one hour at a time, alternating as necessary for a total of eight hours; lifting and carrying up to 10 pounds; avoiding frequent work above shoulder level; and only occasionally bending, twisting, turning, climbing, pushing or pulling without any squatting or crawling.  But the VE concluded that a person with those restrictions could perform other jobs such as clerical positions or small parts factory assemblers, 4,000 of which existed in Wisconsin.

Following the five sequential steps laid out in 20 C.F.R. § 404.1520(a)(4)(i)-(v), the ALJ found that (1) Wilson had not engaged in substantial gainful work, (2) her back injury was a severe impairment, but (3) the injury did not qualify as a listed impairment, (4) and although she could not perform her past relevant work, (5) there were a significant number of jobs in Wisconsin that she could perform. At step 5—the only step relevant to this appeal—the ALJ based his decision on Dr. Durette's May 8 report, as well as the state agency physician's opinion that Wilson could perform a full eight-hour day of sedentary work. The ALJ reasoned that only the May 8 report was supported by the doctor's own clinical findings, discounting the May 20 "corrected" assessment because Dr. Durette gave no reason for the correction and the August 1997 report because it was more restrictive than the clinical findings suggested and appeared to be based on Wilson's own characterization of her symptoms. The ALJ also noted that over-the-counter medication and chiropractic treatment appeared adequate to control Wilson's condition because she had not sought the treatment of a physician for her chronic condition despite having health insurance since 2001.

In December 2003, the Appeals Council denied Wilson's request for review and the ALJ's decision became the final decision of the Commissioner. Wilson sought judicial review of the ALJ's decision under 42 U.S.C. § 405(g). The district court affirmed.

This court will uphold the ALJ's decision if it is supported by substantial evidence in the record. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004). Evidence is "substantial" when it is "sufficient for a reasonable person to accept as adequate to support the decision." *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003) (internal quotations and citations omitted). If the findings of the ALJ are supported by substantial evidence and adequate reasoning, this court will not substitute its judgment for that of the ALJ. *Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005).

On appeal, Wilson "takes no issue" with the ALJ's conclusions concerning the first four steps of the evaluation process outlined in 20 C.F.R. § 404.1520(a)(4)(i)-(v). Although Wilson's arguments are difficult to discern, she appears to focus on the ALJ's conclusion that she is capable of performing other work, *see* 20 C.F.R. § 404.1520(a)(4)(v). Specifically, she seems to argue that the ALJ impermissibly relied on Dr. Durette's report of May 8, 1998 that had been "corrected" by a May 20 report to determine that she could work an eight-hour workday, contrary to other medical evidence supporting the conclusion that she could work only up to six hours a day.

A treating physician's opinion is generally entitled to controlling weight. *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000). However, an ALJ may reject a treating physician's opinion if it is internally inconsistent, or inconsistent with

other medical evidence in the record, such as opinions from consulting physicians. *Dixon v. Massanari*, 270 F.3d 1171, 1176, 1178 (7th Cir. 2001); *Knight v. Chater*, 55 F.3d 309, 313-314 (7th Cir. 1995); *Books v. Chater,* 91 F.3d 972, 979 (7th Cir. 1996). To reject medical evidence, an ALJ must minimally articulate reasons to support his analysis and when both treating and consulting physicians present contradictory conclusions, an ALJ may decide whom to believe, as long as substantial evidence supports that conclusion. *Dixon*, 270 F.3d at 1178.

In this case, the ALJ adequately articulated his reasons for disregarding Dr. Durette's August 1997 and May 20, 1998 reports in favor of the May 8 report and the state agency doctors' reports. He discounted the August 1997 report because it was inconsistent with Dr. Durette's own clinical findings and appeared to be based on Wilson's own characterization of her symptoms. The ALJ rejected the May 20 report because Dr. Durette gave no reason for the purported correction. The ALJ is entitled to presume that, had there been evidence that resolved the discrepancy between Dr. Durette's reports, Wilson would have presented it. *See Glenn v. Sec'y of Health and Human Servs.,* 814 F.2d 387, 391 (7th Cir. 1987) (ALJ is entitled to presume that counseled claimant will make her strongest case). If the August 1997 and May 20 report are disregarded, then the state agency physician reports constitute substantial evidence that Wilson could perform an eight-hour workday.

Finally, we are unpersuaded by a somewhat novel argument advanced by Wilson concerning step five of the five-step disability analysis. She contends that to determine whether a significant number of jobs exists for a claimant, ALJs should consider the particular employment situation in the region where the claimant lives, including whether any vacancies exist, whether the plaintiff would be hired for the position in question, or even whether the plaintiff had the financial means to seek employment. However, she gives us no reason to disturb the statutory standard that such characteristics are not relevant, *see* 42 U.S.C. § 423(d)(2)(A).

AFFIRMED.