**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued May 8, 2008
Decided June 19, 2008

**Before**

JOHN L. COFFEY, *Circuit Judge*

KENNETH F. RIPPLE, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 07-3526

| | |
|---|---|
| REBECCA J. RUDICEL,<br>    *Plaintiff-Appellant*,<br><br>    *v.*<br><br>MICHAEL J. ASTRUE,<br>    *Defendant-Appellee*. | Appeal from the United States District<br>Court for the Northern District of Indiana,<br>Fort Wayne Division.<br><br>No. 1:06-CV-361 RBC<br><br>Roger B. Cosbey,<br>*Magistrate Judge*. |

**O R D E R**

Rebecca Rudicel applied for disability insurance benefits (DIB), alleging that back pain and the surgery she had to alleviate it eight months before she applied for benefits prevented her from being able to work. The administrative law judge found that she was not disabled because a significant number of jobs existed that she could perform. On appeal she argues that the ALJ improperly discounted the opinion of her treating physician. We affirm the ALJ's decision because it is supported in the record with substantial evidence.

Rudicel applied for DIB in May 2003 after having quit her job at Marion General Hospital in September 2002. She had worked there for over 30 years as a food assembler

and as a diet clerk but had to stop working because, according to her, back and leg pain prevented her from being able to do her job. In 2001 she received an X-ray and was diagnosed with mild scoliosis, but the pain in her back worsened, and she eventually went to an orthopaedic surgeon, Dr. Kevin Rahn, in February 2002. Dr. Rahn diagnosed her with thoracolumbar scoliosis, and he noted that her representations about the pain in her back and leg were borne out by his clinical evaluation.

Over the next six months, while Rudicel continued to work, she saw Dr. Rahn four times. In March Rudicel underwent an MRI, which showed "significant stenosis moderately present" in parts of her spine and arthritis in her lower lumbar spine but no cord compression or disc protrusion. Dr. Rahn recommended Celebrex for inflammation, a body glove for support, and physical therapy. In April Dr. Rahn reported that Rudicel was "doing better" and recommended continuing the Celebrex and body glove. But in June Rudicel told Dr. Rahn that once again the amount of pain had increased, even though an X-ray failed to reflect any new medical problem that might be related to her increased pain. Dr. Rahn recommended that she take Medrol for the pain. In August Rudicel reported that the pain was continuing to worsen, and Dr. Rahn noted that she was "getting more and more prominence in her right rib hump area as well [as] more rotational deformity," though, again, an X-ray did not show progression of her scoliosis. Rudicel then decided to have surgery.

Rudicel underwent a thoracolumbar instrumentation and spinal fusion with a bone graft and insertion of a nerve stimulator and battery pack on September 30, 2002. In November Dr. Rahn said that she was "doing very well with minimal pain," while X-rays showed the fusion was healing properly. In January 2003 Dr. Rahn again reported that Rudicel was "doing very well," though she had some lower back pain. He recommended a 15-pound lifting limit. Three months later Rudicel told Dr. Rahn that she had some stiffness, and he recommended that she attend physical therapy and that she still not work. He also noted that her pain had significantly improved. In May, however, Dr. Rahn reported that Rudicel had some soreness and swelling in her lower back, though X-rays again showed no post-surgical problems. He continued the 15-pound lifting limit and noted that she could not return to her job because it involved too much lifting.

At Rudicel's one-year status appointment in September 2003, however, Dr. Rahn recommended more stringent limits after Rudicel reported some pain in the middle of her back. He placed her on a three-pound lifting limit with no bending or twisting and required that she alternate between sitting and standing. He also recommended that she take Mobic for inflammation and undergo an MRI. Two weeks later Dr. Rahn reported that the MRI showed no problems, and the radiologist who read the MRI said that there were "no specific findings related to [Rudicel's] reported symptoms." Dr. Rahn acknowledged that

Rudicel was "having a lot of midthoracic type pain" but noted that she reported that the pain was not as bad as before the surgery. He surmised that the pain may have been as a result of the surgery.

On Dr. Rahn's recommendation, Rudicel had an epidural injection in October 2003 and reported that it helped but did not take away all of the pain. Dr. Rahn then recommended the same restrictions that he had prescribed and ordered a month earlier, including the three-pound lifting limit, and he elaborated that Rudicel was not to bend, twist, stretch, climb stairs or ladders, kneel, or squat. He also recommended that she not stand or walk for prolonged periods and that she change position every 20 to 30 minutes. He further stated that these restrictions would be permanent to "protect her fusion and to prevent her from injuring herself at this point." Finally, because the stimulator battery might have been causing some pain, he recommended removing it, which she did in October 2003. Two weeks later Dr. Rahn reported that the swelling in Rudicel's back was down but kept her on the same restrictions.

Seven months later, in June 2004, Dr. Rahn filled out a functional capacities assessment form. He said that in an eight-hour workday Rudicel could stand for less than one hour, walk for up to two hours, and sit for up to two hours. He then reported that she should remain under the same restrictions as he had recommended in the fall of 2003.

Three state doctors also evaluated Rudicel's condition. In July 2003, before Dr. Rahn had placed Rudicel on the more severe restrictions, Dr. Elpidio Feliciano examined Rudicel. He reported that she had a reduced range of motion in the cervical and lumbar areas of her spine but that she had a normal gait when walking, full strength in her shoulders and lower extremities bilateral, and could squat without difficulty. In August 2003, also before Dr. Rahn had placed Rudicel on the more severe restrictions, Dr. Jonathan Sands reviewed Rudicel's medical records and concluded that Rudicel could occasionally lift or carry 20 pounds, frequently lift or carry 10 pounds, stand and/or walk for about six hours in an eight-hour workday, and sit for a total of about six hours. He also said that she on occasion could climb, stoop, kneel, crouch, and crawl. A third state doctor, Dr. B. Whitley, affirmed this evaluation in December 2003.

At the administrative hearing, Rudicel testified that she could no longer do some "everyday stuff," such as vacuuming and grocery shopping, and had a limited ability to do other household chores, such as cooking. To get relief from the pain, she alternates between walking and lying down and avoids sitting still to prevent her back from locking up. She said that she takes over-the-counter pain medication because prescription medication upsets her stomach and makes her drowsy. Finally, she testified that her jobs as a food assembler and diet clerk involved lifting food trays and files and frequent walking. A

vocational expert testified that an individual of the same age, education, work background, and with similar limitations as Rudicel could not perform Rudicel's previous jobs as she described them. This individual, however, could work as a desk clinical worker as described in the Dictionary of Occupational Titles. He also stated that a person with her limitations could perform several unskilled jobs.

The ALJ concluded that Rudicel was not disabled because she was "capable of performing a significant range of light work." In making that conclusion, the ALJ gave the opinion of Dr. Rahn significant but not controlling weight, finding that the restrictions he placed on Rudicel in September 2003 were not supported in the record. The Appeals Council vacated the decision and remanded the case, finding that the ALJ did not properly evaluate some of Dr. Rahn's treatment records and did not make clear why he did not grant Dr. Rahn's opinion controlling weight.

On remand the ALJ conducted another hearing. This time Rudicel testified that she must alternate between sitting and standing for short periods of time to relieve her pain, which would prevent her from performing her past jobs. She also stated that she had started taking prescription pain medication and that it caused grogginess and concentration problems. Rudicel's husband testified that she gets confused easily, that she cannot make financial decisions, and that she is "just not there sometimes." The vocational expert testified that an individual of the same age, education, and work experience as Rudicel and who is similarly restricted to light work in a low-stress job could work in a limited range of light-work positions that are available in the local economy. The restrictions upon which the expert based his assessment were that the individual could do no overhead work and no kneeling, crouching, crawling, climbing, or squatting, but could occasionally bend and twist and could sit and stand for 30 minutes at a time. The expert also testified that if the individual also is limited to lifting and carrying three pounds or less, however, she could not perform those jobs.

The ALJ again concluded that Rudicel was not disabled because she could perform a significant number of jobs. The ALJ found that Rudicel had a residual functional capacity (RFC) to lift and carry 20 pounds occasionally and 10 pounds frequently, sit for about six hours in an eight-hour workday, and stand and/or walk for about six hours in an eight-hour workday. Additionally, he found, she must be able to alternate between sitting and standing and can do each for 30 minutes at a time, is limited to occasional bending and twisting, cannot kneel, crouch, crawl, squat, climb, or drive, and must have a low-stress job. In making these findings, the ALJ analyzed each of Dr. Rahn's treatment records and then explained which opinions he relied on for each portion of the RFC finding. For the lifting and carrying limits as well as the standing, sitting, and walking requirements, the ALJ gave the greatest weight to the opinions of the state agency doctors, especially the evaluation

done by Dr. Sands because it was "better supported by the evidence of record."  The ALJ stated that the more severe restrictions Dr. Rahn placed on Rudicel in September 2003 were not supported by any medical evidence, as the MRI showed no new problems or findings to explain the cause of her pain, and concluded that the restrictions were based on Rudicel's subjective complaints.  The ALJ gave no weight to the June 2004 functional-capacity form that Dr. Rahn filled out because he did not refer to any medical evidence and also had not examined Rudicel in the past seven months.  For the postural movement and other non-exertional limits, however, the ALJ gave "great weight" to Dr. Rahn's opinion of October 2003 recommending that Rudicel needed to change positions every 30 minutes and was restricted in bending, twisting, stretching, climbing, kneeling, squatting, and driving.  Though the ALJ found that Rudicel could not perform any past relevant work, he found that there were other jobs she could perform based on the vocational expert's testimony.

The Appeals Council denied Rudicel's request for review.  Rudicel thereafter filed a complaint in the district court seeking review of the agency's denial of benefits pursuant to 42 U.S.C. § 405(g).  The magistrate judge, hearing the case by consent of the parties, affirmed the ALJ's decision, and Rudicel appealed.

Because the Appeals Council declined to review the ALJ's decision, we treat the ALJ's ruling as a final decision.  *Schmidt v. Astrue*, 496 F.3d 833, 841 (7th Cir. 2007).  We review the ALJ's decision deferentially, affirming it if it is supported by substantial evidence.  *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007).  "Evidence is 'substantial' if it is sufficient for a reasonable person to accept as adequate to support the decision." *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003) (internal quotation marks and citation omitted).  We view the record as a whole but, when considering the weight of evidence, cannot substitute our judgment for that of the ALJ.  *See id*. at 212; *Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000).

On appeal Rudicel argues that the ALJ improperly gave more weight to the opinions of the state agency doctors than to the opinion of Dr. Rahn, Rudicel's treating physician.  Specifically, Rudicel contends that the state agency doctors did not know about Rudicel's worsening condition because they evaluated her before Dr. Rahn had placed her on stricter limits and because they did not review the later records.  She also argues that Dr. Rahn's opinion was entitled to greater weight because he had a "lengthy treatment relationship" with Rudicel and is a specialist.

A treating physician's opinion about the nature and severity of the claimant's impairment is given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and" consistent with substantial evidence in the record.  20 C.F.R. § 404.1527(d)(2); *see Schmidt v. Astrue*, 496 F.3d at 842; *Skarbek v.*

*Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004).  The ALJ may discount a treating physician's opinion, however, if it is inconsistent with a consulting physician's opinion, internally inconsistent, *see Skarbek*, 390 F.3d at 503, or based solely on the claimant's subjective complaints, *see White v. Barnhart*, 415 F.3d 654, 659 (7th Cir. 2005).  We recognize that the treating physician's opinion is important because that doctor has been able to observe the claimant over a period of time, but we also acknowledge that the doctor may want to do a favor for a patient and thus "too quickly find disability."  *Stephens v. Heckler*, 766 F.2d 284, 289 (7th Cir. 1985); *see Schmidt v. Astrue*, 496 F.3d at 842.

We are of the opinion that because there is a substantial amount of evidence in the record in support of the ALJ's decision, he is authorized to give greater weight to the state agency doctors' opinions than to Dr. Rahn's later opinions concerning Rudicel's lifting, carrying, standing, sitting, and walking limitations.  Dr. Sands's evaluation in August 2003 was supported by the consultative examination performed by Dr. Feliciano in July 2003 as well as the contemporaneous reports from Dr. Rahn in which he placed Rudicel under a 15-pound lifting and carrying limit and concluded that she could not return to her previous jobs.  But the more severe restrictions under which Dr. Rahn placed Rudicel beginning in September 2003—particularly the three-pound lifting and carrying limit—are not similarly supported by medical evidence.  An MRI done in October 2003 showed no changes that would cause the pain of which Rudicel complained, and Dr. Rahn did not report any other medical findings as reasons to increase her restrictions.  *See Skarbek*, 390 F.3d at 504 (upholding ALJ decision to discount treating physician's finding that claimant had limited range of motion because it was not supported by X-rays or other medical evidence).  Rudicel argues that Dr. Rahn concluded definitively that the increased pain she began feeling in the fall of 2003 was from the instrumentation and fusion, but his notes suggest that he was searching for the cause and that he was, in all probability, not certain of this conclusion.  Further, we note that Dr. Rahn's sudden change in recommendation was inconsistent with his previous reports that she was "doing well."  *See Schmidt v. Astrue*, 496 F.3d at 842-43 (upholding ALJ decision to discount treating physician's opinion because treatment notes saying that claimant was doing well and had no medical problem related to her complaints were inconsistent with later work-limitation recommendations).  A patient's condition certainly may worsen but, again, Dr. Rahn did not provide any medical evidence to support his changed opinion.  Thus, substantial evidence supports the ALJ's conclusion that Dr. Rahn must have been relying solely or too heavily on Rudicel's subjective complaints, which is reason enough to discount his opinion.  *See White*, 415 F.3d at 659; *Rice v. Barnhart*, 384 F.3d 363, 370-71 (7th Cir. 2004).

Rudicel's argument that the ALJ should have given more weight to Dr. Rahn's opinion because he is a specialist is also unpersuasive.  That a medical opinion comes from a specialist and is related to that doctor's area of expertise is just one of several factors the

ALJ must consider in deciding how to weigh conflicting medical opinions. *See* 20 C.F.R. § 404.1527(d)(1)-(6); *Books v. Chater*, 91 F.3d 972, 979 (7th Cir. 1996). Here, despite Dr. Rahn's specialty, the ALJ found that Dr. Rahn's opinion regarding Rudicel's lifting and carrying limitations as well as her standing, sitting, and walking limitations was not supported by sufficient medical evidence and was contradicted both by the opinions of other doctors and by Dr. Rahn's own previous opinions. It is for the ALJ to determine how much weight to give to the various medical opinions presented in a case, and we will uphold that decision as long as it is supported by substantial evidence. *See Stephens*, 766 F.2d at 289; *Strunk v. Heckler*, 732 F.2d 1357, 1364 (7th Cir. 1984); *see also Hofslien v. Barnhart*, 439 F.3d 375, 377 (7th Cir. 2006). As we have previously concluded, the ALJ, based upon the record, had reasonably found that factors such as objective medical evidence and consistency weighed against Dr. Rahn's opinion. *See* 20 C.F.R. § 404.1527(d)(3), (4).

Finally, Rudicel argues that the ALJ "impermissibly 'played doctor'" by not granting more weight to Dr. Rahn's opinion. But the ALJ, not any doctor, makes the final decision about whether a claimant is disabled. *See* 20 C.F.R. § 404.1527(e); *Johansen v. Barnhart*, 314 F.3d 283, 288 (7th Cir. 2002); *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000).

For the foregoing reasons, we affirm the ALJ's decision.