# In the
# United States Court of Appeals
## For the Seventh Circuit

———————

No. 04-2218

JAMES H. WHITE,

*Plaintiff-Appellant,*

v.

JO ANNE B. BARNHART,

*Defendant-Appellee.*

———————

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 03 C 522—**Barbara B. Crabb**, *Chief Judge.*

———————

ARGUED JANUARY 20, 2005—DECIDED JULY 14, 2005

———————

Before FLAUM, *Chief Judge*, and BAUER and KANNE, *Circuit Judges.*

BAUER, *Circuit Judge.* In June 2000, James White filed for Disability Insurance Benefits and Supplemental Security Income payments under Titles II and XVI of the Social Security Act based on a variety of ailments. After his applications were denied, a hearing was held on his claims before an Administrative Law Judge. The ALJ concluded that White was not disabled as defined by the Act because he retained the ability to perform a significant number of jobs in the national economy. The district court affirmed. We affirm.

## I.  Background

White has had two significant injuries. In September 1982, he was involved in a motorcycle accident, in which he sustained a fracture of his right femur and a fracture of his right proximal tibia with disruption of the posterior cruciate ligament. Following the accident, White applied for and was awarded disability benefits from approximately September 1982 through June 1989.

Sixteen years after the motorcycle accident, in November 1998, White developed neck and right arm pain, which he attributed to a seasonal job that required him to pick up and deliver wreaths and other Christmas decorations. The pain persisted despite physical therapy, spreading down his arm to his fingers and into his left leg. White was seen by various doctors for his pain, but the medical examinations failed to reveal any abnormalities apart from limited range of motion and tenderness in the neck.

On July 20, 2001, White saw his family physician, Dr. Woldum. White reported that he constantly felt stiff and swollen all over and that he was chronically tired because the pain interfered with his sleep. Dr. Woldum diagnosed White with chronic musculoskeletal pain and referred him to Dr. Zondag, an occupational medicine specialist.

Dr. Zondag evaluated White on August 2, 2001. White reported pain associated with a myriad of daily activities and also stated that he suffered from headaches, double vision, ringing in his ears, dizziness, chronic nasal congestion, sore gums, trouble with swallowing, shortness of breath, heat intolerance, excessive sweating, difficulty with urination, constipation, nightmares, flashbacks, and decreased sexual performance. After listening to White's complaints and performing a physical examination, Dr. Zondag concluded that White had: (1) cervical disk changes which had been treated and were nonprogressive with radiculopathy by examination; (2) status post trauma to the right hip with

right hip and femur injuries with persisting residuals; and (3) chronic pain disorder with somatoform pain disorder present.[1]

White saw Dr. Woldum again on January 8, 2002, and he complained of the same overall symptoms. Dr. Woldum diagnosed chronic musculoskeletal pain and wrote a letter indicating that White was unable to perform any type of substantial gainful activity.

On June 5, 2000, White filed applications for Disability Insurance Benefits and Supplemental Security Income payments, asserting that he was disabled due to pain in his back, neck, upper torso, pelvis, and feet. The applications were denied initially and again on reconsideration.

At White's request, an administrative hearing was held on February 5, 2002. White testified that he is bothered by arm, shoulder, back, neck, and hip pain, which causes him to feel tired and nauseous, and makes it difficult to sleep for any length of time. Dr. Steiner, a physician who specializes in physical medicine and rehabilitation, testified as a medical expert. Based on his review of the results of a test performed by Dr. Zondag and on the absence of objective findings that are typically found in patients with severe, chronic pain like that claimed by White, Dr. Steiner opined that White's "chief condition" was a "somatoform situation." Dr. Steiner also testified that none of White's physical conditions would meet or equal any listed impairment. Dr. Steiner opined that White retained the ability to work at the "light" exertional level, 20 C.F.R. § 404.1567(b), with only occasional overhead lifting on the right.

---

[1] Somatoform disorders are "a group of psychiatric disorders characterized by physical symptoms that suggest but are not fully explained by a physical disorder and that cause significant distress or interfere with social, occupational, or other functioning." THE MERCK MANUAL OF DIAGNOSIS AND THERAPY, Sec. 15, Ch. 186 (17th ed. 1999).

Richard Armstrong testified as a vocational expert. In response to a hypothetical based on White's background and the ALJ's residual functional capacity evaluation (an overhead lifting restriction, a sit/stand option, ability to lift/carry 10 pounds frequently and 20 pounds occasionally), Armstrong stated that White could not perform his past relevant work. However, Armstrong testified that an individual with White's restrictions could perform the jobs of assembly worker, of which there were 7,000 jobs in Wisconsin; security guard (1,000 jobs); cashier (5,000 jobs); and visual inspector (1,000 jobs). Armstrong also identified jobs that exist in significant numbers in the national economy that a person with White's limitations could perform.

On May 1, 2002, the ALJ issued a written opinion rejecting White's claim. Following the five-step sequential evaluation from 20 C.F.R. §§ 404.1520 and 416.920, he concluded that: (1) White was not performing substantial gainful work; (2) White's physical impairments are severe; (3) the severity of White's physical impairments does not equal any listed impairment; (4) White cannot perform past relevant work; and (5) White is capable of making a successful adjustment to work that exists in significant numbers in the national economy. As a consequence of his finding at Step 5, the ALJ concluded that White was not disabled under the Act. The district court adopted a magistrate judge's recommendation to affirm the ALJ's ruling, and this appeal ensued.

## II. Discussion

White offers several arguments on appeal. His primary argument stems from Dr. Zondag's conclusion that White suffered from chronic pain disorder with somatoform pain present, and Dr. Steiner's opinion that White's "chief condition" was a "somatoform situation." The ALJ discounted their opinions regarding somatoform, concluding that there

was no documentation of medically determinable somatoform. White asserts that this conclusion was in error and that the ALJ should have given Dr. Zondag's opinion controlling weight because Dr. Zondag was his treating physician. White also contends that he met the listing for somatoform pain disorder and, as a consequence, the ALJ should have found him to be disabled without regard to vocational factors. As a fallback position, White maintains that even if he does not meet a listing, the ALJ's residual functional capacity evaluation was erroneous because it had no credible foundation in the medical evidence.

At the outset, we note that White made identical arguments before the magistrate judge, which were all rejected, and he has made no effort to distinguish the magistrate's reasoning and conclusions. It is true that we owe no deference to the district court in the social security context, and that White is not necessarily obliged to address its analysis. *Groves v. Apel*, 148 F.3d 809, 811 (7th Cir. 1998). But it is a risky tactic, especially where, as here, the magistrate or district judge has issued a thorough and persuasive opinion. For example, at both tiers of appellate review, White invoked the "treating physician rule" from the Social Security Administration Regulations to argue that Dr. Zondag's opinion is entitled to controlling weight. The relevant regulation provides that the opinion of a treating source is entitled to controlling weight if the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence . . . ." 20 C.F.R. § 404.1527(d)(2); *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 825 (2003). As the magistrate judge recognized, the problem with White's argument is that Dr. Zondag was not a treating source as that term is defined by the regulations because he did not have an ongoing relationship with White. 20 C.F.R. § 404.1502. Rather, Dr. Zondag, who only examined White once, fits the

definition of a nontreating source: "Nontreating source means a physician . . . who has examined you but does not have, or did not have, an ongoing treatment relationship with you." *Id.* As a result, we agree with the magistrate judge that the ALJ was not required to assign controlling weight to Dr. Zondag's opinion.

White also insists that the ALJ should have found him disabled at Step 3 because the somatoform diagnosis evidenced that he met the somatoform disorder listing. *See* 20 C.F.R. § 404, Subpt. P, App. 1, Listing 12.07. However, as the magistrate judge pointed out, the ALJ concluded before Step 3 that there was no documentation of medically determinable somatoform disorder. That is the finding that we must review, because if it was supported by substantial evidence, then there was no reason to consult the somatoform listing. The ALJ provided the following rationale for his conclusion:

> [T]he opinions of Dr. Steiner and Dr. Zondag are not given significant weight for mental impairments because neither doctor specializes in mental impairments. Furthermore, Dr. Zondag's opinion was based on the claimant's subjective complaints. In addition, he had examined the claimant only once and might not have been familiar with Mr. White's medical history. The claimant has never been treated for a mental illness, taken any psychotropic medication, or alleged any mental impairment.

App. 135. We consider the ALJ's explanation to be reasonable and adequate to support his conclusion that there was no documentation of medically determinable somatoform disorder.[2] Indeed, it is difficult to think of more appropri

---

[2] The absence of a history of taking psychotropic medication may not have been a relevant consideration. Based on our research, it
(continued...)

ate factors than a physician's specialty and familiarity with the patient and his medical history when determining how much weight to assign to his opinions. The practice finds support in both Supreme Court case law and the applicable regulations. *Black & Decker*, 538 U.S. at 832; 20 C.F.R. §§ 404.1527(d)(2)(i) and (d)(5). The somewhat tentative nature of Dr. Steiner and Dr. Zondag's diagnoses may also have influenced the ALJ's finding. R. 68 (explaining that White suffers from "a somatoform situation"); R. 335 (diagnosing White with chronic pain disorder with somatoform pain disorder present). At any rate, it was not irrational or unreasonable for the ALJ to discount a psychiatric diagnosis offered by two nontreating doctors who specialize in physical impairments.

White next argues that the ALJ's residual functional capacity evaluation has no credible foundation in the medical evidence. It bears noting that White does not contend that the ALJ's conclusion about White's functional capacity had *no* foundation in the medical evidence, only that it had no *credible* foundation in the evidence. This is a tough argument to make on a Social Security appeal because the reviewing court "is not allowed to substitute its judgment for the ALJ's by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility." *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003) (citations omitted). Dr. Steiner's testimony, along with the opinions of two State Agency Medical Consultants, provided the evidentiary foundation for the ALJ's residual

---

[2] (...continued)

does not appear that persons suffering from somatoform disorder are typically prescribed psychotropic medication unless the disorder is accompanied by a coexisting mood or anxiety disorder that requires such medication. Nonetheless, any such error is harmless because the other reasons mentioned by the ALJ were adequate to support his conclusion.

functional capacity evaluation. In response to questioning from the ALJ, Dr. Steiner opined that White could perform "at least in the light range" with occasional overhead lifting on the right side. R. 68. The State Agency Medical Consultants also opined that White could perform light work. The light exertional range to which Dr. Steiner and the State Consultants referred "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b). The ALJ's ultimate residual functional capacity finding tracked Dr. Steiner's opinion almost exactly, and Dr. Steiner's opinion, buttressed by the State Consultants' opinions, was an adequate evidentiary foundation for the finding.

White also claims that the ALJ violated the "treating physician rule" when he declined to give controlling weight to Dr. Woldum's opinion that he was unable to perform any type of substantial gainful activity. But the opinion of a treating physician is only entitled to controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence. . . ." 20 C.F.R. § 404.1527(d)(2). Dr. Woldum's opinion did not meet either regulatory requirement. As explained by the ALJ, Dr. Woldum's opinion was based on White's subjective complaints rather than accepted medical techniques, and White's complaints were not credible in light of the opinions of numerous physicians who examined him and found no objective evidence to support his claims of debilitating pain. Dr. Woldum's opinion was also inconsistent with the opinions of Dr. Steiner and the State Agency Medical Consultants, and at least partially inconsistent with the conclusions of several other physicians. Accordingly, we reject White's "treating physician rule" argument with regard to Dr. Woldum's opinion.

Lastly, White criticizes the ALJ for crediting Dr. Steiner's opinion about White's residual functional capacity and then

discounting his opinion that White suffered from a "somato-form situation." We do not view the ALJ's selective crediting of Dr. Steiner's opinions as problematic. Dr. Steiner is a physiatrist; physiatrists are experts in diagnosing and treating acute and chronic pain and musculoskeletal disorders. The ALJ credited Dr. Steiner's opinion to the extent that it related to his specialty—White's residual functional capacity in light of his physical ailments—and discounted Dr. Steiner's opinion when he strayed from his area of expertise and opined that White had a psychiatric disorder. This was a reasonable way to distinguish among Dr. Steiner's opinions.

## III.  Conclusion

For the reasons stated herein, we conclude that the ALJ's findings were supported by substantial evidence and AFFIRM the decision.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*

USCA-02-C-0072—7-14-05