**UNPUBLISHED ORDER**
Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois  60604**

Argued February 28, 2006
Decided April 7, 2006

**Before**

Hon. JOHN L. COFFEY, *Circuit Judge*

Hon. DIANE P. WOOD, *Circuit Judge*

Hon. TERENCE T. EVANS, *Circuit Judge*

No. 05-2719

| | |
|---|---|
| RICHARD A. BRADLEY,<br>*Plaintiff-Appellant,* | Appeal from the United States District<br>Court for the Western District of Wisconsin |
| *v.* | No. 04-C-0755-S |
| JO ANNE B. BARNHART,<sup>*</sup><br>*Defendant-Appellee.* | John C. Shabaz,<br>*Judge.* |

**O R D E R**

In 2000, Richard Bradley filed for disability insurance under the Social Security Act ("the Act"), 42 U.S.C. §§ 416(I), 423, claiming that he suffered from fibromyalgia, chronic fatigue syndrome ("CFS"), and depression.  After his claim was administratively denied, Bradley requested and received a hearing before an administrative law judge ("ALJ").  The ALJ found that Bradley failed to show that his ailments rose to the level of being debilitating under the Act, and that he could do other work.  The Social Security Appeals Council then denied Bradley's request for review, and that made the ALJ's decision the final decision of the Commissioner of Social Security.  *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

---

\*        Pursuant to Fed. R. App. P. 43(c), Jo Anne B. Barnhart is substituted for her predecessor, Kenneth S. Apfel, as Commissioner of Social Security.

Bradley next appealed to the district court, which affirmed the ALJ's decision. Bradley now appeals that decision to this court.

Bradley was 55 years old at the time of his hearing before the ALJ. He has a high school education supplemented with vocational school courses in machining and welding. He served in the military (completing two tours of duty in Vietnam) and worked as a metal fabricator and welder for approximately 25 years. Most recently, Bradley worked as a self-employed dairy farmer in Northern Wisconsin; in addition to farming he homeschooled his youngest son.

At the hearing, Bradley presented the following testimonial and documentary evidence supporting his claim: In 1994, Dr. Alan Bridges of the VA Hospital Rheumatology Clinic in Tomah, Wisconsin, diagnosed him with fibromyalgia and depression. Over the next few years, Bradley experienced increased pain, fatigue, and depression. Bradley stated that his condition worsened in late 1999 and 2000, when "flare-ups" of his fibromyalgia prevented him from working steadily on his farm; once the "flare-ups" passed, however, he could resume normal activities. But his inability to work steadily on the farm fueled his depression, which his primary care physicians treated with pain killers and anti-depressants. Although the medication appeared to help, the pain and depression prevented him from operating the farm on his own, and in November 1999 he sold off his dairy herd. Soon after, Bradley reported to his primary care physicians that he contemplated suicide.

As a part of his disability application, Bradley underwent a consultative examination in July 2000 with an internal medicine specialist, the results of which showed that he could still function despite pain and depression. In February 2001, Bradley began seeing a psychiatrist, Dr. Tapeesh Kansal, for depression. Bradley stated at times that the treatment improved his moods, but that there were nonetheless instances when the treatment did not help his depression or ability to cope with not being able to farm.

In July 2002, Dr. Bridges and Dr. Kansal were asked to submit separate questionnaires to assess Bradley's Residual Functional Capacity ("RFC"), which gauges what work-related activities he could perform despite his impairments. *See Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001); *see also* 20 C.F.R. § 404.1545(a)(1). Dr. Bridges noted in his RFC assessment that he diagnosed Bradley with fibromyalgia in 1994, which developed into what he called "a more chronic fatigue syndrome." Dr. Kansal completed a Mental Impairment questionnaire and Mental RFC assessment in which he stated that Bradley suffered from "adjustment disorder" and depression that stemmed from the fibromyalgia.

After Bradley presented evidence supporting his claim, the ALJ questioned an independent medical expert regarding Bradley's psychological ailments. The

medical expert testified that Bradley's depression did not restrict his daily activities; Bradley had only mild difficulty in maintaining social functioning; and that Bradley had only moderate difficulties in maintaining concentration, persistence, or pace.

The ALJ then questioned a vocational expert regarding what type of work Bradley could perform despite his ailments. After confirming that the expert was familiar with Bradley's claim and the evidence supporting it, the ALJ posed a hypothetical question in which he asked if an individual with Bradley's medical condition could perform "simple, routine, repetitive, low-stress work." The vocational expert replied yes. After Bradley's counsel interjected that the term "low-stress work" was "unclear," the vocational expert clarified that he defined the term to mean "[o]ne- and two-step jobs." The vocational expert then continued that Bradley could perform jobs as a visual inspector (15,000 positions available in the state of Wisconsin), security guard (11,000), and messenger courier (1,125).

After the evidence was submitted, the ALJ applied the five-step analysis, 20 C.F.R. § 404.1520(a)(4)(i)-(v), and found: that Bradley had not engaged in substantial gainful employment since the alleged onset of his disability (step one); that Bradley suffered from severe impairments, including osteoarthritis, gastroesophageal reflux disease, and depression (step two); but that none of his impairments qualified as a listed impairment (step three). The ALJ then determined that Bradley did not retain the RFC to continue farming (step four); but went on to find that there was "simple, routine, repetitive, low-stress work" Bradley could perform in the national economy (step five).

In reaching his conclusion the ALJ stated that he was not persuaded by Bradley's evidence. The ALJ did not place great evidentiary weight upon the RFC assessments submitted by Dr. Bridges and Dr. Kansal; he explained that the medical evidence as a whole demonstrated that Bradley had "normal motor strength, reflexes, and sensation" and "normal ambulation," and that Bradley "had no restrictions of activities of daily living resulting from his mental impairments and only mild difficulties in maintaining social functioning." The ALJ also stated that Bradley was not a "persuasive witness" because he exaggerated his claims of pain and depression, and that Bradley's depression and thoughts of suicide were "understandable" because of the emotional impact of being forced to sell his dairy herd.

In reviewing the ALJ's decision, we are limited to examining whether it is supported by substantial evidence. *Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). "Substantial evidence" means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.* Although we may not re-weigh the evidence or substitute our judgment for that of the ALJ, the ALJ must at

least minimally articulate his analysis with enough detail and clarity to permit meaningful appellate review. *Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005).

Bradley presents four challenges to the ALJ's decision. He first asserts that the ALJ failed to account for his fibromyalgia and CFS at step two, which requires Bradley to establish that he has a "medically severe impairment or combination of impairments" that significantly limit his ability to work. *See* 20 C.F.R. §§ 404.1520(a)-(c); 416.920(a)-(c). However, step two is a threshold analysis that requires Bradley to show only that he has *one* severe impairment. *See Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003) ("Having found that one or more of [appellant's] impairments was 'severe,' the ALJ needed to consider the aggregate effect of the entire constellation of ailments.")*; Hickman v. Apfel*, 187 F.3d 683, 688 (7th Cir. 1999) ("[I]t is quite apparent that severity is merely a threshold requirement."). The ALJ did find that Bradley had a severe impairment—he found, in fact, that Bradley had several severe impairments—and accordingly proceeded at step three to examine whether any of Bradley's impairments qualified as a listed impairment. It is thus irrelevant that the ALJ did not make a specific step two finding for Bradley's claims of fibromyalgia and CFS.

Bradley next argues that the ALJ erred by not affording the RFC assessments of Dr. Bridges and Dr. Kansal controlling evidentiary weight without explanation. This error, Bradley suggests, was prejudicial because their assessments demonstrate that his fibromyalgia and CFS were disabling impairments.

An ALJ gives controlling weight to a treating physician's opinion only if "it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." *White v. Barnhart*, 415 F.3d 654, 659 (7th Cir. 2005). A "treating physician," in turn, is a physician who has provided medical treatment or evaluation, and who has, or has had, an ongoing relationship with the claimant. *Id.* at 658. When a treating physician's views are inconsistent with substantial evidence, the ALJ is free to credit conflicting views instead. *Dixon*, 270 F.3d at 1177.

Despite Bradley's arguments to the contrary, the ALJ *did* give reasons for discounting the RFC assessments offered by Dr. Bridges and Dr. Kansal. The ALJ discounted Dr. Bridges's assessment because he did not treat Bradley for fibromyalgia in 1999 and because his conclusions contradicted substantial evidence in the record. For instance, the ALJ stated that Dr. Bridges contradicted contemporaneous clinic notes in the record from the other physicians and nurse practitioners who, unlike Dr. Bridges, did examine Bradley. The ALJ further noted that Dr. Bridges's conclusions were inconsistent with the written opinions of two independent physicians who, after having reviewed the record, agreed that Bradley

could perform light work.  Regarding Dr. Kansal, the ALJ noted that he did not treat Bradley for depression until 2001, two years after the alleged onset date. Accordingly, Dr. Kansal was not a treating physician for the purposes of Bradley's depression claim, *see White*, 415 F.3d at 658-59, and thus the ALJ did not err in declining to award controlling weight to his assessment, *see id.*; *Dixon*, 270 F.3d at 1177.

Bradley next asserts that the ALJ erred by summarily rejecting his testimony as "unpersuasive."  According to Bradley, the ALJ impermissibly "played doctor" and reached erroneous conclusions regarding his depression and thoughts of suicide; namely, that his depression and thoughts of suicide were understandable given the emotional impact of being forced to sell his dairy herd.

An ALJ is best positioned to determine a witness's truthfulness, and we will not overturn an ALJ's credibility determination unless it is "patently wrong." *See Barnett v. Barnhart*, 381 F.3d 664, 670 (7th Cir. 2004).  We will affirm an ALJ's credibility finding so long as the ALJ gives specific reasons for the finding that are supported by the record.  *Brindisi ex rel. Brindisi v. Barnhart*, 315 F.3d 783, 787 (7th Cir. 2003).

Our review of the record reveals that the ALJ *did* explain why he found Bradley's testimony to be "unpersuasive."  The ALJ noted that Bradley's testimony described his pain from fibromyalgia as being more intense than what was written in the contemporaneous clinic notes of his treating physicians.  The ALJ also stated that the clinic notes did not support Bradley's claim that he would miss two or more work days per month; the notes rather regularly referred to Bradley working around the home or on the farm, and Bradley himself described how he would homeschool his youngest son.  Although the ALJ's comments regarding the causes of Bradley's depression and suicidal inclinations may not have been entirely appropriate, *see Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990) ("[J]udges, including administrative law judges of the Social Security Administration, must be careful not to succumb to the temptation to play doctor."), Bradley does not point to an instance at which the ALJ relied on those comments in making his adverse credibility determination.  Thus, the ALJ was not "patently wrong" that Bradley was an "unpersuasive witness." *See Barnett*, 381 F.3d at 670.

Finally, Bradley argues that the ALJ erred in the fifth step of his analysis by adopting the vocational expert's opinion that he could perform "low-stress work" without accounting for Bradley's individual ability to cope with stress.  Here, Bradley relies on Social Security Ruling 85-15, which states that "stress is a highly individualized phenomenon" that must be assessed as such in any hypothetical posed to a vocational expert.  Bradley argues that the ALJ's incomplete hypothetical stemmed from the failure to evaluate Bradley's mental impairments according to 20

C.F.R. § 404.1520a(c)(3) (which Bradley labels the "special technique"). This regulation requires ALJs to rate the degree of a claimant's functional limitation in four respects: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation.

Bradley's claim that the ALJ did not follow the regulation's "special technique" fails. As the Commissioner points out, the ALJ did address in his decision the four categories of functional limitation specified in 20 C.F.R. § 404.1520a(c)(3). Bradley's argument that the ALJ's hypothetical was incomplete is equally meritless. When a judge poses a hypothetical question to a vocational expert, the question must include all limitations supported by the record, *see Steele v. Barnhart*, 290 F.3d 936, 942 (7th Cir. 2002), including work-related stress, S.S.R. 85-15; *see also Allen v. Barnhart*, 417 F.3d 396, 405 (3d Cir. 2005). A hypothetical question that does not include all limitations supported by the record is fundamentally flawed, and a decision that a claimant can adjust to other work cannot stand if it is based on a flawed hypothetical. *Young v. Barnhart*, 362 F.3d 995, 1005 (7th Cir. 2004). However, an incomplete hypothetical question may be cured by showing that the vocational expert reviewed the claimant's medical records prior to testifying and that the records contained the omitted information. *Steele*, 290 F.3d at 942.

The hypothetical question did not need to specifically address Bradley's inability to cope with work-related stress because his inability to cope with stress was not supported by the record. *Steele*, 290 F.3d at 942. Bradley has not pointed to anything in the record that suggests he is unable to cope with work-related stress. He rather merely directs us to the RFC assessments of Dr. Kansal and Dr. Bridges stating that his ability to work depends on the amount of pain caused by his fibromyalgia; they nothing about his ability to cope with work-related stress.

Moreover, even if Bradley could produce evidence demonstrating that he is unable to cope with work-related stress, the ALJ's error in failing to define "low-stress work" is harmless. Bradley argues correctly that the ALJ erred by adopting the vocational expert's definition of the term "low-stress work" ("[o]ne- or two- step jobs"), and thus did not account for Bradley's individualized reaction to stress. *Young*, 362 F.3d at 1004-05 & 1004 n.4 ("[T]he hypothetical question was flawed in that it purported to tell the vocational expert what types of work [claimant] could perform rather than setting forth [claimant's] limitations and allowing the expert to conclude on his own what types of work [claimant] could perform."). However, this deficiency is cured because the vocational expert reviewed all of the exhibits entered into the record and stated that his review of the record formed the basis of his testimony. Because the record includes numerous psychological assessments of Bradley and none referred to his inability to cope with stress, *cf. Ragsdale v. Shalala*, 53 F.3d 816, 818-21 (7th Cir. 1995) ("The record contained repeated

references to the claimant's age.  Thus, the D.C. Circuit recognized that an omission from a hypothetical question can be resolved by a record showing that prior to testifying the vocational expert reviewed the portion of the administrative record containing the omitted information."), the ALJ did not err by adopting the vocational expert's definition of "low-stress work," *Steele*, 290 F.3d at 942.

The judgment of the district court is AFFIRMED.

.