**UNPUBLISHED ORDER**
Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois  60604**

Argued March 27, 2006
Decided April 11, 2006

**Before**

Hon. RICHARD D. CUDAHY, *Circuit Judge*

Hon. MICHAEL S. KANNE, *Circuit Judge*

Hon. TERENCE T. EVANS, *Circuit Judge*

No. 05-3316

| | |
|---|---|
| LAURIE WHEELER,<br>    *Plaintiff-Appellant,*<br><br>    v.<br><br>JO ANNE B. BARNHART,<br>Commissioner of Social Security,<br>    *Defendant-Appellee.* | Appeal from the United States District Court for the Eastern District of Wisconsin<br><br>No. 04-C-329<br><br>William C. Griesbach,<br>*Judge.* |

**ORDER**

Laurie Wheeler applied for Disability Insurance Benefits in July 2000, claiming that she was disabled because she suffers from fibromyalgia, chronic fatigue syndrome, chronic shoulder pain, migraine headaches, acid reflux, and a sleep disorder.  Her claim was denied initially, upon reconsideration, and after a hearing before an ALJ.  The ALJ found that, although Wheeler had severe impairments, they did not equal a listed impairment and she was capable of light work.  Because the ALJ's decision is supported by substantial evidence, we affirm the denial of benefits.

At the time of her hearing, Wheeler was 48 years old. She has the equivalent of a high school education and attended college for one year. From 1990 to 1997, she worked as a teacher's assistant at a daycare center but stopped working on the advice of her doctor because her "condition" was "worsening."

Wheeler testified that she first experienced pain in her neck, right shoulder and back following an injury in 1979. The injury required two surgeries on her right shoulder–one in 1984 and another in 1992–and, after the shoulder failed to respond to the surgeries or physical therapy, Wheeler sought treatment from Jerry Bulen, an osteopathic physician. In September 1997, Bulen completed an assessment for the Department of Labor concerning Wheeler's ability to return to gainful work. He reported that he had diagnosed Wheeler with post-injury fibromyositis, post-traumatic degenerative disk disease, and back strains and that he believed Wheeler should be "restricted from working." The record, however, does not contain any of Bulen's treatment notes or diagnostic reports for Wheeler. As a result of her inability to work, Wheeler testified, she received social security benefits beginning in January 1998, but they were discontinued when she married later that year, making her financially ineligible for benefits. Since October 1998, she maintained, the pain in her back and shoulder has continued to increase. She testified that she had constant back pain that "feels like it's on fire," could not lift as much as she could eight years ago, and could sit for only 20 minutes at a time. She also testified that she had "problems with [her] hands" and suffered from migraines three times a week.

Wheeler's medical history reveals treatment for various complaints of pain. From June 1998 to April 1999, Wheeler saw Wayne Stanley, M.D., four times. Stanley's notes reflect that Wheeler told him she suffered from migraine headaches and was off work due to fibromyalgia. She complained of tenderness over her entire back and in her hands and requested a referral to a fibromyalgia clinic. Stanley performed several diagnostic tests and found only that Wheeler had a "problem abducting [sic] her shoulder joint" and that she "probably" suffered from "a steroid-negative arthritis." Wheeler then sought treatment from Richard Chalal, M.D., an internist. From November 1999 to January 2000, Chalal's notes reveal that Wheeler saw him twice, complaining of pain from an old shoulder injury, fibromyalgia, migraine headaches, and heartburn. Chalal performed a physical exam that revealed Wheeler was "very sensitive to touch" and had restricted motion in her right shoulder.

Wheeler moved to Wisconsin and began seeing Charlene Greene, an osteopathic physician, in August 2000. Wheeler initially complained to Greene of pain in her neck, right arm, and mid-back that she attributed to the 1979 injury. She also told Greene that she had been diagnosed with fibromyalgia and chronic fatigue syndrome and that she suffered from migraines and acid reflux. Greene

examined Wheeler, noting "tissue texture abnormalities," and treated her with "manipulative therapy." On subsequent visits, Wheeler complained of depression, insomnia, marital problems, "financial stress," anxiety, tingling in hands, back and neck tightness, gastroesophageal reflux disease, possible menopause, continued shoulder pain, carpal tunnel syndrome, and fibromyalgia. But the majority of her complaints focused on her depression and inability to sleep.

Two state agency physicians also assessed Wheeler in conjunction with her application for benefits. A. Neil Johnson, M.D., met with Wheeler in November 2000, and reported that she had "mild weakness of the right shoulder girdle" and "possible fibromyalgia." At the consultation, Wheeler complained of headaches, right shoulder pain, swelling in her hands, and fibromyalgia. Johnson's physical examination revealed that she had pain when she moved her neck, back, and right shoulder, and was "essentially tender to all palpation" but that he was unable to identify a "specific trigger point." He also noted loss of motion in her right shoulder. But, he observed, Wheeler had no difficulty getting on and off the examination table, walking, or handling small objects. In December 2000, J. McDermott, M.D., completed a "physical residual functional capacity assessment" for Wheeler. With respect to Wheeler's exertional limitations, he opined that she could lift 10 to 20 pounds and could stand or walk for a total of six hours a day. He noted, however, that she would have to shift position on occasion and might be limited to only occasional overhead reaching with her right arm.

At the state's request, Dr. Greene, Wheeler's most recent treating physician, completed a Fibromyalgia Residual Functional Capacity Questionnaire in November 2002. In this questionnaire, Greene reported that Wheeler met the American Rheumatological criteria for fibromyalgia but qualified her assessment, noting that she had treated Wheeler primarily for "depression not fibromyalgia" and was "unable to assess" Wheeler's ability to sit, stand or walk. She also noted that Wheeler had complained of pain in her neck, upper back, and both hands but reported no complaints of pain in her shoulders, arms, legs, or feet. Greene opined that, even though Wheeler could not lift anything and could use her arms for reaching less than one hour per day, she was capable of low stress work.

Two months later, with no apparent explanation in the record, Greene prepared another, shorter version of the Fibromyalgia Residual Capacity Questionnaire. (Wheeler refers to this in her brief as a "supplement.") This version was more specific in terms of expressing Wheeler's physical limitations, even though Greene jotted at the bottom of the form that her estimates "are not fact based as actual functional capacity thru PT was not done." Greene reported that she did not know how far Wheeler could walk but opined that Wheeler could sit for only five minutes at a time and stand for fifteen minutes, with a daily limit of four hours sitting or standing during an eight-hour workday. She also opined that

Wheeler could work no more then one or two hours per day; would require unscheduled breaks; would likely miss work about four days per month; could rarely or never twist, stoop, climb ladders; and could not use her neck to look up, down, or to the side.

Following the five sequential steps laid out in 20 C.F.R. § 404.1520(a)-(f), the ALJ found that (1) Wheeler had not performed substantial work since her alleged onset date of October 1997; (2) her physical impairments were severe; (3) her physical complaints did not meet or equal a listed impairment; (4) she could not perform her past relevant work and had no transferable skills; and (5) there were jobs available to her because she retained "the exertional capacity to perform substantially all of the requirements of light work" under Medical-Vocational Rule 202.20. Of significance for this appeal, the ALJ refused to give Dr. Greene's January 2003 questionnaire controlling weight because it was "not fact based" and was inconsistent with other medical evidence. The ALJ also found Wheeler's subjective complaints of pain not "fully credible." The ALJ explained that there were "few, if any," objective medical findings to support her testimony that she had been diagnosed with fibromyalgia, and the state's physical exam revealed she was "tender to all areas of palpation," not just to palpation of the specific trigger points "that are crucial in making the diagnosis." He also observed that, contrary to Wheeler's testimony that she could sit for only short periods of time, Wheeler sat at the hearing for 50 minutes without visible signs of pain. The Appeals Council declined review, and the ALJ's decision became the final decision of the Commissioner of Social Security. The district court then affirmed the decision. Wheeler appeals.

We will uphold the ALJ's decision if it is supported by substantial evidence. *Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005). An ALJ's findings are supported by substantial evidence if they identify supporting evidence in the record and adequately discuss the issues. *Golembiewski v. Barnhart*, 322 F.3d 912, 915 (7th Cir. 2003).

Wheeler first challenges the ALJ's decision to discount Dr. Greene's opinion, which if properly credited would compel a finding of disability because, she says, Greene opined that Wheeler was unable to work in a sustained setting. *See* S.S.R. 96-9p (setting forth the criteria for assessing an applicant's ability to perform work in a sustained setting). She argues that the ALJ erroneously concluded that Greene's opinion was "not fact based" merely because Greene reported that she had not performed a functional capacity evaluation upon Wheeler. She also contends that Greene's opinion was "generally consistent" with the other medical evidence and thus entitled to controlling weight. In addition, she claims that the ALJ failed to adequately articulate its reasons for rejecting Greene's opinion.

An ALJ must "give controlling weight to the medical opinion of a treating physician if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with the other substantial evidence." *Hofslien v. Barnhart*, 439 F.3d 375, 376 (7th Cir. 2006) (internal quotations omitted). When a treating physician's views do not meet this standard, however, the ALJ may discount the opinion because "a claimant is not entitled to disability benefits simply because her physician states that she is 'disabled' or unable to work." *Dixon v. Massanari*, 270 F.3d 1171, 1177 (7th Cir. 2001).

Here the ALJ permissibly discounted Dr. Greene's January 2003 opinion that Wheeler suffered from severe physical limitations that prevented her from working in a sustained setting because it was not supported by clinical or laboratory diagnostic techniques and is inconsistent with the other medical evidence. Contrary to Wheeler's contentions, the ALJ did not discount Greene's January 2003 opinion merely because Greene did not perform a functional capacity test, but because her opinion was also inconsistent with "the rest of claimant's medical record." Indeed, the record is devoid of any reports of clinical or laboratory testing Greene may have performed to support her opinions concerning Wheeler's physical limitations. Greene's January 2003 opinion therefore appears to be based solely upon subjective complaints that Wheeler made to her. In addition, Greene's January 2003 opinion that Wheeler could sit for only five minutes, stand for only fifteen minutes, and work for only one or two hours a day is internally inconsistent with her November 2002 opinion that she could not assess Wheeler's ability to sit or stand and that Wheeler could perform low stress work. The ALJ explained his concerns about these inconsistencies in his opinion. Accordingly, the ALJ's decision to afford Greene's January 2003 opinion "little weight" was proper. *See White v. Barnhart*, 415 F.3d 654, 659 (7th Cir. 2005) (upholding ALJ's decision to discount treating physicians' residual functional capacity evaluation because it was based solely upon claimant's subjective complaints of pain and inconsistent with other medical evidence).

Wheeler also challenges the ALJ's finding that she was not "fully credible," arguing that the ALJ failed to properly consider her testimony concerning daily activities, subjective complaints of pain, medications, and alternative treatments. *See* S.S.R. 96-7p. Instead, she says, the ALJ granted excessive weight to the medical opinions of the state's doctors and "play[ed] doctor" when he reviewed examination notes reporting that she did not respond to manipulation of the "discrete trigger points" used to diagnose fibromyalgia and questioned her claim that she had been diagnosed with the disease in the past. Wheeler also contends that the ALJ, in discounting her subjective complaints of pain, impermissibly relied upon his observation that she was able to sit for the duration of the hearing without obvious signs of discomfort.

When assessing an individual's credibility, an ALJ must consider evidence in the record regarding the individual's daily activities as they relate to her symptoms and treatment regimen. *See Brindisi ex rel. Brindisi v. Barnhart*, 315 F.3d 783, 787 (7th Cir. 2003); C.F.R. § 404.1529; S.S.R. 96-7p. The ALJ may not ignore subjective complaints of pain solely because they are unsupported by medical evidence, *Schmidt v. Barnhart*, 395 F.3d 737, 746-47 (7th Cir. 2005), but may consider discrepancies between the objective medical evidence and the degree of pain complained of, *Sienkiewicz v. Barnhart*, 409 F.3d 798, 804 (7th Cir. 2005); *Powers v. Apfel*, 207 F.3d 431, 435-36 (7th Cir. 2000). Because the ALJ is best positioned to judge a witness's truthfulness, we will overturn an ALJ's credibility determination only if it is patently wrong. *Schmidt*, 395 F.3d at 746-47.

The ALJ supported his credibility determination with a reasoned discussion of the record in light of these rules. The ALJ first explained that the discrepancy between Wheeler's assertions that she suffers significant pain caused by fibromyalgia and Dr. Johnson's inability to locate any specific trigger points for her pain called into question her alleged diagnosis of fibromyalgia. *See Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir. 1996) (recognizing that one symptom of fibromyalgia is "pain all over" but explaining that "the only symptom that discriminates between it and other diseases of a rheumatic character" is the existence of "18 fixed locations on the body . . . that when pressed firmly cause the patient to flinch"). Contrary to Wheeler's contention that the ALJ "played doctor" when he questioned the veracity of her past diagnosis, the ALJ was entitled to consider the discrepancies between Dr. Johnson's examination notes and Wheeler's testimony when deciding whether to accept the reliability of the fibromyalgia diagnosis. The ALJ's decision also reveals that he adequately considered Wheeler's conflicting testimony concerning her daily activities. For example, the ALJ noted Wheeler's testimony that she could walk only a couple blocks but that Dr. Johnson recorded her as saying she could walk one or two miles. Similarly, the ALJ observed that, contrary to Wheeler's contention that she could sit for only short periods of time, she sat for at least 50 minutes at the hearing without visible discomfort. *See Powers*, 207 F.3d at 436 (expressing discomfort with the "sit and squirm" test yet endorsing the role of a hearing officer's observation of the claimant in determining credibility). Thus the ALJ's credibility determination complied with Social Security Regulation 96-7p.

AFFIRMED.