NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued June 6, 2011
Decided July 13, 2011

**Before**

MICHAEL S. KANNE, *Circuit Judge*

TERENCE T. EVANS, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 10-3778

| | |
|---|---|
| SAMANTHA J. UNDERWOOD, | Appeal from the United States District |
| *Plaintiff-Appellant*, | Court for the Central District of Illinois. |
| | |
| *v.* | No. 2:09-cv-02072 |
| | |
| MICHAEL J. ASTRUE, | David G. Bernthal, |
| Commissioner of Social Security, | *Magistrate Judge*. |
| *Defendant-Appellee*. | |

**O R D E R**

Samantha Underwood has suffered from mental health problems throughout her life. Since 2001, she has seen numerous treatment providers, and about the only thing those providers have agreed on is that Underwood suffers from an affective mood disorder. Whatever Underwood's exact diagnosis, complications from her mental health problems led her to apply for social security disability benefits in early 2004. After two hearings, the administrative law judge ("ALJ") concluded that Underwood was not disabled. Underwood then petitioned for review in the district court, claiming that the ALJ's decision was not supported by substantial

evidence. The district court affirmed the determination of the ALJ. Underwood now brings her case to us, arguing (yet again) that the ALJ erred. We affirm.

The ALJ's disability analysis was guided by a five-step regulatory framework. *See* 20 C.F.R. §§ 404.1520, 416.920. Step one asks whether the claimant is engaging in substantial gainful activity. If she is, she is not disabled and the analysis ends; if she is not, the analysis continues. Step two goes to whether the claimant has an impairment that qualifies as severe. If the impairment is not severe, the claimant is not disabled; if the impairment is, the ALJ proceeds to the next step. Step three deals with whether the claimant's impairment meets or equals one of the impairments listed in the regulations. If the claimant's impairment matches the list, the claimant is disabled; if it does not, the ALJ must determine the claimant's ability to do work activities on a sustained basis despite limitations from her impairment. Step four deals with this residual functional ability—the ALJ must determine whether the claimant has the ability to perform the requirements of past work. If she can, she is not disabled; if she cannot, the analysis proceeds to the fifth and final step. Step five asks whether the claimant can engage in any other work considering her functional ability. If she can, she is not disabled.

Underwood's case turned, in large part, on step three. For Underwood's impairment to equal or match the listing under that step, her disorder must have caused two of the following functional impairments: a marked restriction of activities of daily living; a marked difficulty in social functioning; a marked difficulty in concentration, persistence, or pace; or repeated episodes of extended decompensation. *See* 20 C.F.R. Pt. 404, Subpart P, App.1 § 12.04(B).

Whether Underwood's impairments were marked or mild depended upon her treatment record, a record that painted a somewhat confusing—and in pockets inconsistent—picture of Underwood's impairments. Some experts opined that Underwood's affective disorder did not cause marked impairments in any area, but instead resulted in more mild ones. Others—including Dr. Ramirez, Underwood's treating psychiatrist—concluded that Underwood's disorder caused marked impairments in numerous areas, including social functioning and concentration. A medical expert, Dr. Marquis, was called to review Underwood's record and offer a comprehensive opinion about her impairments. Dr. Marquis initially determined that Underwood's impairments were mild, but amended his opinion towards more marked impairments after he was presented with Dr. Ramirez's summary report. Dr. Marquis did insert one caveat: he had not seen Dr. Ramirez's treatment notes, and thus could not say whether Dr. Ramirez's conclusions were supported by his records.

In progressing through his step-by-step analysis, the ALJ found that there were inconsistencies between Dr. Ramirez's conclusions and his notes, as well as inconsistencies between Dr. Ramirez's conclusions and the opinions of other providers. He also found Underwood's credibility lacking, and accordingly discredited some of her subjective reports to her providers. Based on these problems, the ALJ discounted Dr. Ramirez's conclusions and

Dr. Marquis's amended opinion. Instead, the ALJ gave more weight to other experts' reports and to Dr. Marquis's original assessment, which supported more mild functional impairments. And because Underwood could perform the requirements of past work despite these mild impairments, the ALJ found that she was not disabled under the Social Security Act.

Underwood's primary argument is that the ALJ's finding of mild impairments was not supported by substantial record evidence. We disagree. Substantial evidence is only "such relevant evidence as a reasonable mind might accept as adequate to support [the ALJ's judgment]," *Richardson v. Perales*, 402 U.S. 389, 401 (1971), and it was present here. The record shows that Underwood left her home six to eight times per month, that she talked to acquaintances on the phone, that she had close friends with whom she kept in regular contact, that she maintained a good relationship with her mother, and that she maintained generally appropriate interaction with her children. In reviewing her treatment records, the state psychologists concluded that Underwood's social functioning was adequate. This was enough to support the ALJ's determination that Underwood had mild social impairments.

The ALJ's conclusion that Underwood had only mild restrictions in concentration, persistence, or pace was also supported by substantial evidence. Underwood's treatment providers often described her concentration and attentiveness as adequate. Her providers also noted that Underwood was cognitively intact, was cooperative, and was generally able to take directions. Psychological testing showed that Underwood had adequate recall. Her therapist gave her instructions on several occasions and noted that Underwood was able to understand and implement those instructions. Based on their review of most of Underwood's records, the state psychologists also concluded that Underwood did not have a marked impairment in concentration, persistence, or pace. This was sufficient to support the ALJ's conclusion.

To be sure, there was evidence in the record that went the other way, and Underwood challenges the ALJ's treatment of that evidence. She initially suggests that the ALJ ignored the evidence that supported marked impairments and an inability to work, thereby committing legal error. *See Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010). Our review of the record, however, leaves us convinced that the ALJ analyzed all of the evidence put forth. The ALJ did not ignore the evidence in question, but instead weighed and discredited it.

Underwood devotes the rest of her arguments to attacking the way the ALJ weighed the evidence that swung in her favor. Before we deal with those arguments, we pause to note that the ALJ is the factfinder in a disability proceeding—it is for him to weigh evidence and determine credibility. *See White v. Barnhart*, 415 F.3d 654, 659 (7th Cir. 2005). On appeal, we review the ALJ's assessment of the evidence deferentially, and we will not upset that assessment by reweighing evidence, reevaluating credibility, or otherwise substituting our judgment for the ALJ's. *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003). All that said, there are limits to the ALJ's power as factfinder. He cannot, for instance, flout social security

regulations that impose evidentiary rules upon him, nor can he conclude that a party lacks credibility without a reasoned basis. *See Punzio v. Astrue*, 630 F.3d 704, 709-10 (7th Cir. 2011).

Underwood seizes on both of these limitations, arguing first that the ALJ discredited the conclusions of Dr. Ramirez in violation of social security regulations. The regulation at issue, 20 C.F.R. § 404.1527(d)(2), provides that the ALJ must give the treating physician's conclusions controlling weight unless they are not supported by the treating physician's records or are otherwise inconsistent with the reports of other providers. "An ALJ who does not give controlling weight to the opinion of the claimant's treating physician must offer 'good reasons' for declining to do so." *Larson v. Astrue*, 615 F.3d 744, 749 (7th Cir. 2010).

Contrary to Underwood's arguments, the ALJ offered good reasons for declining to give Dr. Ramirez's conclusions controlling weight. After delving into the record, the ALJ first observed that a number of Dr. Ramirez's treatment notes did not mesh with his ultimate conclusion that Underwood was disabled. For instance, around a week before issuing a letter instructing parties that Underwood could not work, Dr. Ramirez noted that Underwood was stable, was maintaining a good relationship with her family, was cognitively intact, and appeared to have good judgment. Second, the ALJ noted that Dr. Ramirez's conclusions did not harmonize with the conclusions of other providers, who had often noted that Underwood was stabilized on medication, proceeding well in treatment, able to work, and so on. Both of these were sufficient reasons for discrediting the treating psychiatrist's determinations, as well as the amended opinion from Dr. Marquis that was based upon those determinations.

Underwood also contends that the ALJ erred in finding her not credible and in discounting some of her subjective reports to treatment providers based on that lack of credibility. An ALJ's power to discount credibility is not unlimited: he must consider a number of factors imposed by regulation, *see* 20 C.F.R. § 404.1529(c), and must support his credibility findings with evidence in the record, *see Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009). Once he does, however, his credibility determinations are entitled to "special deference" and will not be overturned unless "patently wrong." *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010).

We conclude that the ALJ's credibility determination was reasoned, supported by evidence, and not clearly incorrect. The ALJ noted a number of discrepancies in Underwood's reports to her treatment providers, including inconsistencies about her prior psychiatric admissions, her ability to care for her children, her reasons for leaving various jobs, and her drug use. The ALJ also observed a strange change in Underwood's symptomology that suggested a credibility problem: after Underwood obtained counsel to pursue her disability claim, she began reporting more intense manic episodes, new psychotic symptoms, and novel concerns about multiple personality disorder and attention-deficit hyperactivity disorder. These problems were enough to permit the ALJ to doubt Underwood's credibility and to discount some of her subjective reports to her providers based upon that lack of credibility.

In the end, this is a case with inconclusive facts. The question is not whether we believe Underwood was disabled, but whether the ALJ's determination was supported by substantial evidence. It was. The ALJ also acted within his discretion in weighing the conflicting evidence: he offered adequate reasons for discrediting Dr. Ramirez's conclusions and doubting Underwood's credibility. We therefore **AFFIRM** the judgment of the district court.