NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued June 8, 2016
Decided July 15, 2016

**Before**

WILLIAM J. BAUER, *Circuit Judge*

DANIEL A. MANION, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

No. 15-3652

| | |
|---|---|
| KIM MARIE STEVENSON,<br>    *Plaintiff-Appellant*,<br><br>    *v.*<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of Social Security<br>    *Defendant-Appellee*. | Appeal from the United States District Court for the Northern District of Indiana, Hammond Division.<br><br>No. 2:14-CV-203<br><br>Joseph S. Van Bokkelen,<br>*Judge*. |

**O R D E R**

Kim Stevenson was denied disability benefits after claiming that she was disabled primarily by a left-wrist injury. An administrative law judge found that, despite this injury and its attendant limitations, she retained the residual functional capacity to perform past relevant work as a teacher aide-computer coach. Stevenson challenges both the adequacy of the ALJ's RFC finding and the ALJ's decision not to give more weight to the opinions of her primary-care physician. Because substantial evidence supports the ALJ's decision, we affirm.

## Background

In May 2012 Stevenson, then 55, applied for disability-insurance benefits and supplemental-security income, claiming that a left-wrist injury and left-knee pain rendered her unable to work. She had injured her left wrist when she slipped and fell on ice in 2009. Up until that time, she had worked full-time as a housekeeper (2007–09) and teacher aide-computer coach (1991–2005). After her injury, in 2010 and 2011, she worked up to 60 hours per week as a daycare assistant and 24 hours per week as a deli worker (though presumably not at the same time). And from 2011 until June 2012, she worked part-time as a cashier and prep cook at Kentucky Fried Chicken.

In connection with her application for benefits, Stevenson was seen by Dr. Jerald Smejkal for a consultative examination in June 2012. Dr. Smejkal noted that Stevenson had reduced grip strength and pain and stiffness in her left hand and wrist, but retained full range of motion. An X-ray of Stevenson's left wrist showed some abnormalities that were likely caused by the healing of a wrist fracture, including possible avascular necrosis[1] of the lunate bone. Stevenson had another consultative examination with Dr. Smejkal in September 2012, but she wore a brace on her left wrist and would not use her left hand to allow the doctor to evaluate its strength.

In October 2012 Stevenson's primary-care physician, Dr. Adolphus Anekwe, first evaluated her wrist injury. He noted Stevenson's subjective complaints of left wrist pain and diagnosed an old, healed fracture. Dr. Anekwe ordered an X-ray of her left wrist and referred her to an orthopedic surgeon, Dr. Judson Wood. The following month, Dr. Anekwe again saw Stevenson and prepared a "To whom it may concern" letter, stating that Stevenson had been diagnosed with a displaced fracture of capitate bone and pain in her left wrist and was "totally incapacitated to work." Stevenson returned to Dr. Anekwe nine more times in 2013 for pain medication refills, but she never saw the orthopedic surgeon or had a left wrist X-ray taken (because of financial reasons, she says).

In October 2013, Dr. Anekwe filled out a "multiple impairment questionnaire" in support of Stevenson's application for benefits. In it, Dr. Anekwe listed Stevenson's diagnoses as "displaced fracture capitate bone left wrist" and "wrist pain," estimating that Stevenson's severe and constant pain was a 9 out of 10. He said that he had not been able to completely relieve her pain with medication without unacceptable side effects. Dr. Anekwe noted that Stevenson should not lift or carry more than 5 pounds, and that

---

[1] Avascular necrosis is the death of bone tissue caused by a lack of blood supply. *Avascular necrosis*, MAYO CLINIC, http://www.mayoclinic.org/diseases-conditions/avascular-necrosis/basics/definition/con-20025517 (visited June 1, 2016).

she was essentially precluded from grasping, turning, or twisting objects with her left hand, using her fingers or left hand for fine manipulations, or using her left arm for reaching. Dr. Anekwe also stated that Stevenson's impairments would likely cause her to miss work more than three times a month.

At a hearing before an ALJ in January 2014, Stevenson testified about her wrist injury. She explained that she had "guestimated" her alleged onset date of February 9, 2012, because she could not remember the exact date of her fall, but later clarified that it had occurred in 2009. She explained that she had "worked through it" and not sought medical treatment until 2012 because she did not have medical insurance.

Stevenson also detailed the lifestyle adjustments she made in response to her injury. She said that her daughter cooked meals for her, washed her laundry, and did her mopping and vacuuming. She said that she shopped for groceries with an electric cart (because sometimes her legs give out), and on those occasions her daughter accompanied her. She explained that she could lift up to five pounds with her right hand but nothing with her left. When asked if she could pick coins up off of a table, Stevenson said that she could do so with her right hand but not her left, which she said was "balled up in a knot" and could not be straightened out. She said that she left her clothing unzipped, did not tie her shoes, and no longer wore anything with buttons. She experienced pain from her wrist injury 24 hours per day, for which she took Vicodin and Tylenol and used pain-relieving creams. The pain killers sometimes caused side effects, including nausea, a sore stomach, and dizziness. The pain also disrupted her sleeping.

At the hearing, the ALJ asked the vocational expert a series of hypothetical questions for an individual of Stevenson's age, education, and work experience. The ALJ asked the VE to assume an individual who was restricted to light work, could never climb ladders, ropes, or scaffolds but frequently used ramps and stairs, could balance, stoop, kneel, crouch, and crawl, but perform only occasional handling and fingering with the upper left extremity. The VE concluded that such a person could conduct Stevenson's past relevant work as a computer coach. But if that person were absent from work for up to four work days per month, the VE concluded, she would not be able to work at all.

The ALJ applied the required five-step analysis in 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), and found Stevenson not disabled. The ALJ determined that she had not engaged in substantial gainful activity since the alleged onset date of February 9, 2012 (step one); that her left wrist injury with degenerative changes to the left hand was a severe impairment (step two); that this impairment did not equal a listed impairment (step three); that she had the RFC to perform light work, with the limitation of no more

than occasional use of her left upper extremity for handling and fingering and that she could perform past relevant work as a teacher aide-computer coach (step four).

In determining Stevenson's RFC, the ALJ found that Stevenson's testimony about the severity of her impairments was inconsistent with the medical records. Her wrist injury was severe, the ALJ acknowledged, but the medical records did not objectively document any motor or neurological deficits, such as motor or sensory loss, and the only treatment she had received for her injury was a non-prescribed wrist brace and pain medication.

The ALJ afforded little weight to the opinion of Stevenson's primary care provider, Dr. Anekwe. The ALJ discounted as conclusory Dr. Anekwe's 2012 statement that Stevenson was "totally incapacitated to work," since the doctor did not explain how the wrist fracture and pain limited her ability to lift or carry. The ALJ also found that Dr. Anekwe's responses in his 2013 "Impairment Questionnaire" were not supported by the other medical evidence in the record. The ALJ added that Stevenson's medical treatment appeared "secondary" to her request for benefits, since her doctor appointments did not begin until nearly three years after her wrist injury, and were prompted not by a new need for pain medication but by her need to obtain documentation to support her request for benefits. Finally, the ALJ acknowledged that Stevenson had reduced strength in her left hand, but found nothing in the record to support limitations greater than those restricting her to occasional handling and fingering with the left hand.

In March 2014, after the ALJ had issued his ruling, Stevenson eventually saw the orthopedic specialist, Dr. Wood, who confirmed that the range of motion in her left wrist was "severely limited," with "diffuse tenderness" and "abnormalities noted on the radial and ulnar side." Dr. Wood also opined that Stevenson had posttraumatic arthritis of the left wrist, and that no surgical procedure could be done at that time to alleviate the pain, though a left-wrist fusion may be necessary in the future.

The district judge affirmed the ALJ's decision. The judge found reasonable the ALJ's decision not to afford controlling weight to Dr. Anekwe's 2012 opinion that Stevenson was "totally incapacitated to work" because it conflicted with his own examination notes stating that her left hand retained moderate strength and that she was able to use her fingers, albeit not repetitively. The 2012 opinion also contradicted Dr. Smejkal's assessment that Stevenson maintained normal reflexes and coordination in her left arm. And neither the 2012 opinion nor the 2013 impairment-questionnaire responses were substantiated by medical evidence; rather, the judge observed, they relied on Stevenson's self-reported symptoms. The judge then concluded that the ALJ's

RFC determination was supported by substantial evidence (Stevenson's testimony, the treatment sought and received for her symptoms, her ability to perform a considerable number of daily living activities, and the conflicting opinions of her examining physicians).

### Analysis

On appeal Stevenson first argues that the ALJ's RFC assessment is insufficient. Her argument is narrow, hypertechnical, and semantic. She points to an obvious misprint in a section of the ALJ's order—the boldface and incomplete heading of the ALJ's RFC discussion that abruptly ends with the word "except":

> **After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except**

The omission of any reference to nonexertional limitations, she contends, prevents this court from meaningfully reviewing the ALJ's RFC determination.

But Stevenson challenges no more than a clerical error. While the boldface heading is unquestionably incomplete, the contents of the ALJ's RFC analysis elaborate upon her nonexertional limitations. For example, the decision goes on to explain, in the last few lines of the seventh page, that "even after taking into consideration the claimant reduced strength in her left hand," the record supported no greater limitations than "occasional use of her left upper extremity for handling and fingering." A "commonsensical reading" of the ALJ's analysis makes apparent that she assessed these nonexertional limitations. *Johnson v. Apfel*, 189 F.3d 561, 564 (7th Cir. 1999); *see Rice v. Barnhart*, 384 F.3d 363, 370 n.5 (7th Cir. 2004); *Orlando v. Heckler*, 776 F.2d 209, 213 (7th Cir. 1985).

Stevenson next contends that the ALJ should have given more weight to her treating physician's 2012 and 2013 opinions that her wrist injury prevented her from working. Dr. Anekwe, she maintains, properly based his 2013 opinion on an X-ray of her left wrist that revealed positive ulnar variance, a Colles-type fracture, dorsal angulations of the distal radius, and patchy sclerosis of the lunate bone that may represent an element of avascular necrosis.

But the ALJ provided "good reasons" to give little weight to Dr. Anekwe's medical-source statements. *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010); 20 C.F.R. § 404.1527(d)(2). The ALJ rightly concluded that Dr. Anekwe's terse 2012 conclusion—that Stevenson was "totally incapacitated to work"—did not describe specific physical limitations and was not supported by any medical evidence. Indeed,

that statement is not a medical opinion entitled to deference. *See Loveless v. Colvin*, 810 F.3d 502, 507 (7th Cir. 2016) (claimant's ability to work is question reserved, by regulation, for the Commissioner). As for the 2013 assessment, an ALJ may discount a treating physician's medical opinion that is internally inconsistent or inconsistent with that of a consulting physician, so long as she minimally articulates her rationale. *Skarbek v. Barnhart*, 390 F.3d 500, 503–04 (7th Cir. 2004) (citing *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000)). Here the ALJ was troubled by Dr. Anekwe's determination that Stevenson could not work, given his failure to specify any motor or neurological deficits. And the ALJ appropriately discounted Dr. Anekwe's estimation of Stevenson's pain because it was inconsistent with Dr. Smejkal's examination notes, which characterized her as being "without acute distress." Finally, the ALJ properly gave little weight to Dr. Anekwe's assessment that Stevenson could sit only for six hours and stand or walk for four; such limitations were not substantiated by the doctor's report of a fractured wrist and wrist pain.

AFFIRMED.